Hillsborough, }
  Feb. 6, 1917. }

DANIEL C. GALLEHER & *a.* *v.* MICHAEL H. O'GRADY & *a.*

By the law of Massachusetts, an action upon a guaranty of rent reserved upon a
  lease for years is barred by an eviction from a part of the demised premises;
  and a conveyance to a city for a street by the lessor, and the grantee's
  occupation constitutes such eviction.

ASSUMPSIT, on a contract of guaranty. Transferred from the
September term, 1915, of the superior court by *Sawyer,* J., upon the
plaintiffs' exception to an order directing a verdict for the defend-
ants. The facts are stated in the opinion.

*Taggart, Burroughs, Wyman & McLane (Mr. Wyman* orally), for
the plaintiffs.

*Doyle & Lucier (Mr. Lucier* orally), for the defendants.

PEASLEE, J. The defendants were guarantors for one Higgins
upon his liability to the plaintiffs to pay rent under a written lease
of real estate in Springfield, Massachusetts. The property consisted
of a hotel at the corner of Main and Cross streets, and land in the
rear, fronting on Cross street and enclosed by a board fence. Dur-
ing the term of the lease, the plaintiffs executed a conveyance or
release to the city as follows:
". . . if the said city shall lay out said Cross street . . .
we will pay to the said city upon the completion of the work the sum
of three thousand dollars ($3,000.00) as betterments. . . . The
said city shall pay to us for the strip of land to be taken from our said
real estate on the northerly side of said Cross street, according to the
lines shown on said plan, at the rate of $1,500 per front foot as
measured on the easterly line of said Main street. . . . Said
land to include all now owned by us on the northerly side of said
Cross street that lies southerly of the proposed northerly line as
shown on said plan. Said payment to be made to us . . . on
or before the first day of April, 1913. Also on the further condition
that the present building now standing on said premises shall be
allowed to remain as at present until the expiration of a lease for the
premises, which expires April 30, 1915.
"We hereby agree to and do release the said city from all liability
to us by reason of the acceptance of said Cross street. . . ."

Thereafter the city tore down the fence and occupied the land included in the above description, but did not disturb the building, except a veranda at the rear. Higgins rebuilt the fence on the new line and continued to occupy the balance of the premises for some months. During this time he failed to pay the rent.

The lease was a Massachusetts contract, and the rights of the parties are determined by the law of that commonwealth. The question presented is whether, under that law, there is evidence in the case from which it could be found that the taking of the land under the plaintiffs' agreement with the city did not amount to an eviction.

It is argued that because the lease is referred to in the agreement therefore the city had, notice of the tenant's rights which were protected because of such notice. But the question here is not whether the tenant might have resisted the attempted eviction. It is rather whether he was put out of possession by the landlord "or by its authority." *McCall* v. *Insurance Company*, 201 Mass. 223. Although the city had notice of the lease, yet the landlord undertook to transfer to it authority to enter upon and occupy the premises, subject only to the limitation that the building should not be disturbed during the term of the lease. Entry upon the open land under this conveyance was clearly by authority of the landlord. It was his act, and constituted an eviction from the part of the premises so entered upon. · It may well be that the entry of the city was wrongful, as against the tenant. So is every eviction. If the tenant had so elected, he might have resisted the entry; but he was not obliged to do so. Having yielded to the tortious act, and it conclusively appearing that it was done by authority of the lessor, the usual legal result follows.

It is also said that the final abandonment of the premises by the lessee was not because of the eviction, but because he could not pay his rent. The facts as to this matter are immaterial in this suit. This is not an action to recover for the reasonable value of the part of the premises the tenant continued to occupy (*Meredith Mechanic Association* v. *Company*, 66 N. H. 539), but upon the guaranty of the rent reserved in the lease. Unless an action for the rent can be maintained, the plaintiffs have no standing here.

"This action cannot be maintained if the defendant proves that he has been evicted from a part of the demised premises by the plaintiff. In such case, no recovery can be had on the covenant to pay rent, because the defendant has been deprived of the beneficial

enjoyment of a portion of the estate by the tortious act of the lessor, and the covenant being entire cannot be severed or apportioned so as to allow the plaintiff to recover a part of the rent reserved by the lease. *Shumway* v. *Collins*, 6 Gray, 232." *Leishman* v. *White*, 1 Allen, 489. "His eviction by the landlord from a part of the premises suspends the entire rent, because the landlord 'shall not so apportion his own wrong as to enforce the lessee to pay anything for the residue.' *Hale*, C. J., in *Hodgkins* v. *Robson*, 1 Ventr. 276, 277." *Royce* v. *Guggenheim*, 106 Mass. 201, 202.

These authorities dispose of the plaintiffs' contention that the tenant was still liable for the rent because he remained in possession. He did not remain in possession of the whole premises. The cases holding that the tenant is still liable, are those where the attempted ouster is resisted, and the tenant still holds the property in spite of the landlord's illegal efforts to retake it. They have no application to the situation created by an actual eviction from a part of the premises.

The argument that the agreement with the city can be construed to reserve all the tenant's rights under the lease is not well founded. The document is in terms a conveyance of a right to enter at once, and the express condition that the building shall be allowed to remain as at present until the expiration of the lease, negatives any implied reservation of other rights.

It is also claimed that it could have been found that the land taken from the lessee was not a substantial part of the premises, and therefore there was no eviction. The cases discussing what is a substantial interference with the tenant's enjoyment of the premises are those where the eviction is constructive. But assuming that the same rule would apply to a case like the present one, where the landlord, or those acting by his authority, took actual physical possession of a part of the premises, and turned the tenant out, it must still be held that there was an eviction. The lot in the rear of the buildings was used for storage and other purposes to a greater or less extent. It contained between 2,000 and 3,000 square feet of land and about one fifth of this was taken. It was located in the thickly settled part of the city, and was paid for by the city at the rate of something like $10 a square foot. No reasonable man could find that such a taking did not deprive the tenant of a substantial part of what he had hired. Upon such facts, the eviction is established as a matter of law, and there is nothing for the jury to pass upon. *Smith* v. *Tennyson*, 219 Mass. 508.

There was no error in the ruling of the superior court directing a verdict for the defendants.

*Exception overruled.*

All concurred.