MAX L. POWELL *v.* JAMES A. MERRILL.

Special Term at Rutland, November, 1917.

Present: WATSON, C. J., HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed February 12, 1918.

*Landlord and Tenant—Eviction—Suspension of Obligation to Pay Rent—Forfeiture—Breach of Covenant—Re-entry—Ouster of Tenant—Intent of Landlord—Rights of Tenant—Trial—Improper Remarks of Counsel—Motion for Reargument—Findings of Fact—Conclusiveness—Facts Not in Record—Grounds for Reargument Not Specified in Motion.*

An eviction by act of the landlord, in order to have the effect of suspending the obligation of the tenant to pay rent, must result from a wrongful act of the landlord.

The mere breach of a covenant contained in a lease does not, in the absence of a special stipulation, work a forfeiture of the term or give the landlord a right of re-entry; forfeiture not being favored by the law and stipulation therefor being strictly construed.

When the findings of fact do not show a breach of the conditions in a lease, the landlord cannot justify his re-entry upon the premises upon a provision in the lease giving him the right to re-enter for that reason.

Where the acts of a landlord necessarily result in depriving the tenant of the beneficial enjoyment of the premises or a substantial part of them, the intent to oust the tenant will be conclusively presumed, because the landlord will be presumed to intend the natural consequence of his acts.

An eviction of a tenant by the landlord from a part of the leased premises suspends the obligation to pay rent in its entirety.

Where a tenant has been actually evicted by the landlord, no demand by him for restoration to the premises is necessary to protect his rights.

Where a suit has been brought by a landlord against his tenant to recover for rent in arrears, and defendant deprived of possession by the attachment made, a promise of the tenant to pay the amount due and an endeavor to induce the landlord to release him from further liability does not amount to a waiver of the tenant's right to claim an eviction by the landlord in defense to another suit brought to recover rent which accrued subsequent to the commencement of the first suit.

The fact that a tenant has received and retained rent from a sublessee of part of the leased premises does not affect his right to claim a partial eviction from the premises in defence to an action by the landlord against him to recover unpaid rent.

Improper remarks made by counsel during the cross-examination of a party will not cause a reversal where prejudice is not made to appear; and where the trial was by the court it will be assumed that no harm resulted.

On a motion for reargument, the Supreme Court is bound by the findings of fact filed below pursuant to G. S. 2259, and cannot supplement them by examining the transcript or exhibits for missing facts; and such findings are not enlarged by a reference to the transcript and exhibits contained in the bill of exceptions.

The Supreme Court cannot, to reverse a judgment, supply facts not shown by the record.

An alleged mistake made by the Supreme Court in rendering a decision, not specified in a motion for reargument, is waived.

GENERAL ASSUMPSIT to recover rent claimed to be due under a written lease, for the period between November 1, 1913 and March 1, 1914. Trial by court at the September Term, 1915, Chittenden County, *Miles, J.,* presiding. Judgment for plaintiff to recover rent from November 1, 1913 to November 15, 1913. Plaintiff excepted. The opinion states the case.

*Max L. Powell* for plaintiff.

*V. A. Bullard* and *Sherman R. Moulton* for defendant.

POWERS, J. The plaintiff by a writing under seal, rented to the defendant a building in Burlington. The lease provided for a monthly rent, authorized the lessee to sublet with the lessor's consent, required the tenant to pay the water rates, and stipulated for a right of re-entry for a breach of its covenants.

At some time during the term, the defendant, with the plaintiff's permission, sublet a part of the premises to the American Woolen Company, who occupied such part, undisturbed by the plaintiff, until December 1, 1913, when they paid to the defendant the October and November rent and vacated the premises. The defendant continued to occupy that part of the premises not so sublet until November 15, 1913, on which day the plaintiff brought a suit against him, seeking to recover therein rent in arrear under the lease and certain other items of indebtedness. He placed the writ in the hands of an officer for service, and by his direction the latter went to the premises and attached certain personal property of the defendant there found, and having ejected therefrom one Joseph Agel, who was in the part occupied by the defendant by the latter's permission, placed a padlock on the door and locked the defendant out. He did not interfere with the part occupied by the Woolen Company. Since that time, the defendant has not been in possession of any part of the premises, or had anything to do with them, except to receive the rent as above stated. One half of the rent so received, he turned over to the plaintiff. What became of the suit referred to, we do not know. Whether or not it ever came to trial, and if so, who finally prevailed, is not shown by this record.

The suit before us is an action for rent on the premises from November 1, 1913, to March 1, 1914, on which day the plaintiff gave the defendant a written release from further liability. The defendant filed several pleas, but the transcript shows that the case was tried below without regard to them. Judgment was rendered for the plaintiff to recover rent from November 1 to November 15, 1913, only, and the plaintiff excepted.

The defendant contends that the acts of the officer, done by direction of the plaintiff, amounted to an eviction of him from a substantial part of the premises, and that as a result, his obligation to pay rent was entirely suspended. But an eviction may be rightful or wrongful. 1 R. & L. Dict. 467. The term is commonly used in the books as denoting a wrongful ouster of the tenant by the landlord, and is so used in this opinion. It is established beyond controversy that an eviction by act of the landlord, in order to have the effect contended for by the defendant, must result from a wrongful act of the landlord. "Eviction, properly so called," says Mr. Justice Crowder in the much-cited case of *Upton* v. *Townsend,* 84 E. C. L. 70, "is a wrongful act of the landlord, which operates the expulsion or amotion of the tenant from the land." The rule invoked by the defendant is thus stated by Lord Hale in *Hodkins* v. *Robson,* 1 Ventr. 276; "If the lessor enters into part by wrong, this shall suspend the whole rent; for in such case, he shall not so apportion his own wrong as to enforce the lessee to pay anything for the residue." To the same effect are the American authorities. *Shumway* v. *Collins,* 6 Gray (Mass.) 232; *Mirick* v. *Hoppin,* 118 Mass. 582; *Skelley* v. *Shute,* 132 Mass. 367; *Galleher* v. *O'Grady,* (N. H.) 100 Atl. 549. So unless the acts of the landlord are wrongful, although they permanently deprive the tenant of the use of the demised premises, no eviction is committed (note to 38 A. S. R. at p. 487); and a rightful re-entry does not evict. *Wright* v. *Everett,* 87 Ia. 697, 55 N. W. 4. So the first question for determination is, was this plaintiffs' re-entry—for that is what it amounted to—rightful or wrongful?

The common law rules regulating the rights of landlord and tenant are highly technical and strictly adhered to. Forfeitures are not favored by the law and stipulations therefor are construed strictly. The mere breach of a covenant contained in the lease does not, in the absence of special stipulation, work a forfeiture of the term or give the landlord a right of re-entry.

But the lease before us contains a provision that if the lessee should "at any time for the space of one month refuse or neglect to fulfil the conditions of this lease, then the said Powell shall have the right to enter into and upon the premises to take possession thereof and order out the said Merrill." The plaintiff invokes this clause and insists upon three grounds as justifying his re-entry thereunder: Default in payment of rent; subletting to Agel without consent; and non-payment of water rates.

As we have seen, without the clause referred to, the plaintiff had no right to re-enter. Under the clause his rights are *stricti juris,* and no more than the covenant gives him. Unless one or more of the covenants were at that time broken, and, in view of term of grace specified, had remained broken for one month, no right of re-entry existed on November 15, 1913.

The findings do not directly show that there was any rent then overdue. The nearest that they come to it is that (as we shall see) at some time or other the defendant agreed or offered to pay what rent was due. The findings also fail to show that any part of the premises were sublet to Agel. They show he was there by permission of the defendant, but nothing more. Nor do the findings show that these defaults, if such they were, or either of them had existed for one month before that date. It is found that the defendant failed to pay certain water rates, but whether this failure was a month before the re-entry is not shown. So the plaintiff fails to show by the record that his right to enter and oust the defendant had accrued when he sent the officer to the premises with the writ.

The plaintiff insists that he only intended to make an attachment and not evict the defendant when he sent the officer there, and he complains because he was not allowed to show this. It is true that in speaking of this kind of an eviction it is frequently said that the character of the landlord's act depends on his intention. And so it does; but the landlord will be presumed to intend the natural consequences of his acts (16 R. C. L. 688), and where, as here, his acts necessarily result in depriving the tenant of the beneficial enjoyment of the premises or a substantial part of them, the intent to oust the tenant will be conclusively presumed. *Id; Skelly* v. *Shute,* 132 Mass. 367; *Tallman* v. *Murphy,* 120 N. Y. S. 345, 24 N. E. 716.

The rule contended for by the defendant that an eviction from a part of the premises suspends the rent in its entirely, is

established by the great weight of authority not only in England but in this country. *Mirick* v. *Hoppin,* 118 Mass. 582; *Fifth Ave. Bldg. Co.* v. *Kernocsan,* (N. Y.) 117 N. E. 579; *Kuschinsky* v. *Flanagan,* 170 Mich. 245, 136 N. W. 362, 41 L. R. A. (N. S.) 430, and note, Ann. Cas. 1814 A, 1228.

At the special request of the plaintiff the court found that after the first suit was brought and when the parties were trying to adjust their differences, the defendant promised to pay the rent then due, acknowledged his liability, and endeavored to induce the plaintiff to release him from further liability under the lease by offering to turn over to him all the personal property on the premises.

It is to be borne in mind that his finding relates to the first suit and not to this one. Whatever effect those facts might have had on that suit, they cannot affect the result here. At most, they only show that there was some rent due at the time this peace parley was held. But it does not appear when that was. The facts fall short of showing that such rent was overdue one month when that action was brought. So it is not made to appear by this that the re-entry was lawful.

It is of no consequence whatever that the defendant did not demand restoration to the possession. He had been actually ousted, and no demand was necessary to protect his rights. 16 R. C. L. 685; *Lester* v. *Griffin,* 57 Misc. Rep. 628, 108 N. Y. Supp. 580.

Nor was there anything in the attempt to reach a settlement, above referred to, that amounted to a waiver of the defendant's rights. The attempt failed, and the parties were left right where they were before, so far as this question is concerned.

The fact that the defendant has received and still retains the November rent of the Woolen Company does not affect his rights in this case. The only thing here sued for is rent under the lease.

The plaintiff was a witness, in his own behalf, and, while he was under cross-examination, the defendant's counsel asked questions and made remarks seriously reflecting upon his character for truth telling. These were promptly held to be improper and exceptions were allowed to the plaintiff. We agree that this conduct was improper, but we cannot say that it ought to reverse the case. It must be remembered that the trial was by the court, and we would assume in such cases that no harm

resulted. Moreover the transcript is before us, and from this it satisfactorily appears that no prejudice did in fact result to this plaintiff. In saying this much we do not overlook the fact that prejudice must now be made to appear. We cannot reverse a judgment for the sake of punishing a lawyer in the case.

*Affirmed.*

### ON MOTION FOR REARGUMENT

Powers, J. The foregoing affirmance was announced at the February Term. During that term, and before the certificate had gone down, the plaintiff filed a motion for reargument, and, agreeably to our practice, the entry was withheld, and briefs have now been filed and considered. The motion is predicated upon the sole ground that we were wrong in our assertion that the findings do not show that the defendant was one month in default when the plaintiff took possession. And it is asserted with much confidence that this fact clearly appears from the transcript and exhibits. Perhaps so. The trouble is that it does not appear in the findings. The plaintiff overlooks the fact that we are bound by the findings filed below pursuant to the statute, and cannot supplement them by scanning the transcript or exhibits. It is suggested that the findings are enlarged by the reference to the transcript and exhibits contained in the bill of exceptions. The answer is that this cannot be done. The case was one triable by jury; the trial below was by the court. Therefore, the case is controlled by G. L. 2259 (P. S. 1982), wherein it is expressly provided that in such a case the findings shall be signed by a majority of the court and filed with the clerk. And it is therein expressly forbidden to allow any other or different facts in the bill of exceptions, except such as relate to the admission and rejection of evidence; and we are required to dismiss, on motion, any bill filed to the contrary. This statute precludes an examination of the transcript or exhibits for missing facts. *Singer Mfg. Co.* v. *Nash,* 70 Vt. 434, 41 Atl. 429.

The plaintiff insists that there was a concession made below that there was $220 of rent due on November 15, 1913.; and that, inasmuch as this is exactly the amount of two months' rent, it sufficiently shows that one installment was then one month overdue. No such concession was made. If it was permissible to

look into the trancript, it would only show that at the time this case was tried in the county court, it was conceded that there was due the plaintiff from the defendant the sum above named as damages in another suit then pending in that court between the parties. But it would not appear what that sum represented— whether rent in arrear or something else—or what that suit was for, or how it was related to this one. Assuming, as now claimed, that that suit was the attachment suit under which re-entry was made, all we know about it from the record is that it was brought to recover rent under the lease in question and "for other matters shown by the specification in that case." Exceptions, p. 2. We cannot speculate about what the fact was, nor can we to reverse the judgment, supply facts not shown by the record. *First Nat. Bank* v. *Bertoli,* 88 Vt. 421, 92 Atl. 970. Moreover, such a concession would, in view of the statute, be for our consideration only when shown by the findings or in some proper way made a part thereof.

The plaintiff also insists in the brief that our reference to the defendant's admission of liability was erroneous, and that we therein "mixed up" the two suits. This alleged mistake is not specified in the motion and first appears in the brief. It is therefore waived and not availing. 4 C. J. 635. But if we treat the motion as amended so as to cover it, it would not change the result. A reexamination of the findings shows that our understanding of the matter was correct. The findings do not show when this admission was made, or how long the rent referred to had been overdue.

*Motion denied. Let full entry be made and certificate go down.*