MARY MEAD HINSMAN *v.* MARBLE SAVINGS BANK.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed October 1, 1929.

218

*Fenton, Wing & Morse* for the plaintiff.

*Lawrence & Stafford* for the defendant.

MOULTON, J.  This is an action in contract, brought to recover for the violation of certain covenants, express and implied, contained in a lease of real estate.  Trial was by court, and after finding the facts, judgment was rendered for the plaintiff to recover one cent damages and costs.  Both parties excepted.

The following appears in the finding of facts:  The plaintiff is the owner of a business block in the city of Rutland, known as the Mead Building.  It was erected in 1907 by her father, Dr. John A. Mead from whose estate she acquired title. A part of the building was specially constructed for use as banking rooms for the defendant bank, and according to its suggestions.  The premises consisted of a banking room, in the front, with a vault, a directors' room, in the rear, a stairway and closets.  On September 1, 1907, the defendant entered into occupancy, and on January 29, 1908, a lease of the premises was executed by Dr. Mead and the defendant to run for the term of twenty years from and after September 1, 1907, to the defendant, its successors and assigns, at an annual rent of $1,100, payable in equal monthly installments.  The lease contained a covenant on the part of the defendant to use and manage the premises in a good and husbandlike manner, and a clause providing for re-entry and re-possession upon a failure to perform any of the conditions of the lease.

The defendant continued to occupy the rooms under the lease until about October 1, 1924, when it moved into a new bank building which it had constructed, and at the same time removed all of its banking furniture from the premises.  From October 1, 1924, until about August 1, 1925, the rooms were occasionally occupied for short periods for food and rummage sales and as a real estate office.  On or about the latter date, one Joseph Segale went into possession as a sub-lessee of the defendant, and until September 1, 1927, used and occupied the premises as a fruit and vegetable store, paying to the defendant rent of $125 a month.  Segale turned the front, or banking room, into a sales and display room, and racks or shelves were built on the south and north sides of the room, and in front of the building, and fruit and vegetables were stored and displayed

in the window. Additional lighting fixtures were installed, and the wiring for them was run through conduits which were fastened to the woodwork by nails or cleats. The directors' room was used for the storage of boxes and papers, and for wrapping and unwrapping of fruit.

Some time before the entry of Segale into possession, the plaintiff's husband, who was her agent in looking after the building, learned of the contemplated sub-lease and protested in writing against the use of the premises for any purpose inconsistent with, or not incidental to, a banking business. The installments of rent were accepted by plaintiff up to August 1, 1925; thereafter, although the defendant regularly sent monthly checks, they were not accepted, but were returned.

▮ The use of the premises for a fruit and vegetable market was for a purpose materially different from that for which they had been usually employed, and for which they had been constructed and were adapted, and the sub-letting to Segale for such purpose and use was a breach of the defendant's implied contract that it would not put the premises to a use materially different from that in which they were usually employed, to which they were adapted, and for which they were constructed. During the occupation of Segale, the premises were not used and managed in a good husbandlike manner as intended by the terms of the lease, and they were damaged by this breach of the lease. On or about September 1, 1927, the parties agreed as to the cost of restoring the rooms to as good condition as they were in when Segale took possession, and the agreed amount was paid by the defendant, but in all other respects the rights of the parties were left unaffected. The fair rental value, between August 1, 1925, and September 1, 1927, was $2,000 a year.

After Segale took possession, the plaintiff brought suit in ejectment under G. L. 2146, to recover possession of the premises, but the action was dismissed in this Court. See *Hinsman* v. *Marble Savings Bank*, 100 Vt. 48, 134 Atl. 635.

The plaintiff claims that the lease was forfeited and that she is entitled to recover the fair rental value of the premises from the time Segale took possession up to the expiration of the lease, or as an alternative the entire amount received by the defendant from Segale during this period. On the trial below she expressly disclaimed to recover for any physical damage to the

premises, her counsel stating that compensation for such damages had been agreed upon and paid. And there is no claim to recover, in this action, the rent actually due and unpaid under the lease.

The defendant says that there was no forfeiture because the lease was not terminated by a re-entry, and that it is entitled to judgment for its costs.

The lease was violated by the defendant in two respects: In the express covenant for good husbandry, and in the implied covenant that the lessee would not use the premises in a manner materially different from that in which they were usually employed, to which they were adapted, and for which they were constructed. *Hinsman* v. *Marble Savings Bank, supra,* 100 Vt. at page 50, 134 Atl. 635. But the mere breach of a covenant contained in a lease does not, in the absence of special stipulation, work a forfeiture of the term or give the landlord a right of entry, unless (as is not the case here) it is one that disaffirms or impugns the title of the lessor and tends to defeat the reversion. *Hinsman* v. *Marble Savings Bank, supra; Powell* v. *Merrill,* 92 Vt. 124, 127, 103 Atl. 259. This is so whether the broken covenant is express or implied. *Wade* v. *Madison* (Tex. Civ. App.), 206 S. W. 118, 119. The breach is the ground for forfeiture, but the forfeiture itself arises from the lessor's act. It is optional with him to claim or to waive the forfeiture, and if he would treat the breach as such he must promptly evince his purpose by some distinct and positive act. *Houghton* v. *Cook,* 91 Vt. 197, 204, 100 Atl. 115.

The re-entry clause in the lease in question, as was said in *Hinsman* v. *Marble Savings Bank, supra,* applies only to such stipulations as are contained in the lease, and excludes implied conditions, among them the implied covenant above mentioned. It follows that a re-entry could be made only for breach of the covenant for good husbandry, and without such re-entry, or its legal equivalent, the lease was not terminated. So the question is, was there such re-entry here?

It has been held that where the cause of forfeiture is complete, the bringing of an action for recovery of possession is equivalent to actual entry. *Nichol* v. *Nelson,* 4 Sask. L. 315, 319; *Baxter* v. *Heimann,* 134 Mo. App. 260, 113 S. W. 1152, 1153; *Clark* v. *Jones,* 1 Denio (N. Y.) 516, 519, 43 A. D. 706. In *Michaels* v. *Fishel,* 169 N. Y. 381, 62 N. E. 425, 427, 428,

cited by the defendant, a re-entry clause in a lease was construed, by a divided court, to mean re-entry by an action of ejectment at common law and not by statutory disposses proceedings. The term ''re-entry'' was given a narrow and technical meaning, and the case, in this respect, appears to be contrary to the weight of authority. But, for reasons which will presently appear, it is not necessary to consider this point, nor to decide what effect, if any, is to be given the circumstance that the proceedings previously brought by the plaintiff, in the instant case, were dismissed for lack of jurisdiction.

■■ An action of ejectment under G. L. 2146 is statutory in its nature, and the right to maintain it depends upon the showing of facts, which bring the case within the statute. *Wheeler* v. *Wheeler*, 77 Vt. 177, 179, 59 Atl. 842; *Hinsman* v. *Marble Savings Bank, supra*. The rights of the lessor under the re-entry clause are *stricti juris*, and are no more than the covenant gives her. *Powell* v. *Merrill, supra*, 92 Vt. 128, 103 Atl. 259. She cannot re-enter for one reason, and when that fails, justify her re-entry by assigning another breach which she did not act upon or claim at the time. *Boston El. R. Co.* v. *Grace, etc., Co.*, 112 Fed. 279, 50 C. C. A. 239, 246, 247.

■■ As we have seen, all that appears in the finding of facts, as to the prior ejectment suit, is that after Segale went into possesssion the plaintiff brought an action under G. L. 2146 to recover possession of the leased premises, which was dismissed in Supreme Court. The decision in that case (100 Vt. 48, 50, 134 Atl. 635), went upon the ground that since the breach of the implied covenant did not come within the purview of the statutory remedy, there was a lack of jurisdiction, and the proceeding was accordingly dismissed. It is said in the opinion that the breach of the express covenant for good husbandry was not relied upon in the plaintiff's brief as a ground for recovery. Without considering the effect of the dismissal of the action, it cannot be said that this proceeding was a re-entry for the breach of the express covenant. Indeed, the plaintiff does not specifically so claim, although in argument she says·that she did urge the breach of this covenant as a basis for forfeiture in the ejectment suit. The only foundation for this statement is contained in certain language appearing in her brief in that case to the effect that the question of a breach of the express covenant for good husbandry would become material as one of

fact for the jury only if it should be held that there was no implied covenant restricting the use of the premises. But it was held that there was such an implied covenant, and consequently, according to the plaintiff's own theory, the possible breach of the express covenant was not before the court for decision. Moreover we are bound by the record in the instant case. There is no finding by the trial court as to the claim made in the eject-ment case, and we do not for the purpose of reversing a judg-ment read into the finding of facts something which is not there, and which is not a necessary inference from the facts found. *Trask* v. *Trask's Estate,* 99 Vt. 353, 354, 132 Atl. 136.; *Adams* v. *Ladeau,* 84 Vt. 460, 464, 79 Atl. 996. Neither is it to be pre-sumed that the trial court drew any inference from the facts found when to do so would result in a reversal. *Whitehead* v. *Whitehead,* 84 Vt. 321, 322, 323, 79 Atl. 516.

Since, therefore, no re-entry appears upon the record before us, the lease was not shown to be terminated and there is no basis presented upon which the plaintiff can recover either the fair rental value of the premises, or the entire rent received by the defendant during the period in question. The judgment in her favor for nominal damages was error.

The plaintiff moved the trial court to permit her to file an amendment to her declaration. Permission was refused and she excepted, alleging an abuse of discretion. If the amend-ment had been allowed, it would not affect the views we have expressed, so we give the question no further attention. Other exceptions taken by the defendant present questions not neces-sary to consider.

Upon the record of this case as presented, the trial court should have entered judgment for the defendant to re-cover its costs. Ordinarily we would not remand the case, but would render the judgment that the court below should have rendered. But where, in argument, an aspect of the case is suggested, not before us on the questions presented, which might enable a recovery, the case may be remanded for further pro-ceedings to the end that no injustice may be done. *Hebard* v. *Cutler,* 91 Vt. 218, 222, 99 Atl. 879; *Parker* v. *Bowen,* 98 Vt. 115, 120, 126 Atl. 522; *Rice* v. *Bennington County Savings Bank,* 93 Vt. 493, 512, 108 Atl. 708; *O'Boyle* v. *Parker-Young Co.,* 95 Vt. 58, 63, 112 Atl. 385. Such is the case here. The question whether there has been a re-entry for a breach of the

express covenant in the lease has not been passed upon. We think that an opportunity to present this point should be allowed the plaintiff, and for this reason the entry is:

*Judgment reversed, and cause remanded.*