2013 VT 7

# Vermont Small Business Development Corporation v. Fifth Son Corporation, J. Michael Henzel, Mad Partners, LLC and Chris Pierson

[67 A.3d 241]

No. 12-170

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed January 25, 2013

*Chris Pierson of Mad Partners, LLC*, Pro Se, Waitsfield, Appellant.

*J. Michael Henzel of Fifth Son Corporation*, Pro Se, Charlotte, Appellee.

¶ 1. **Dooley, J.** Appellant landlord appeals a partial summary judgment order concluding that his eviction of appellee tenant from a property was wrongful, as well as the trial court's ruling on a post-trial motion that tenant was not liable to landlord for rent that accrued post-eviction. Because landlord's notice of default was defective, and because a wrongful eviction releases a tenant from liability for rent accrued post-eviction, we affirm.

¶ 2. Mad Partners, LLC and Chris Pierson (collectively, lessor) leased a restaurant and residential condominium to defendants Fifth Son Corporation and J. Michael Henzel (collectively, lessee) for a two-year period beginning January 1, 2009. Until March 2010, lessee operated a restaurant called "Miguel's at Sugarbush"

in the leased commercial building, and stayed in the condominium irregularly.

¶ 3. Lessor and lessee signed two separate leases, one for the restaurant and one for the condominium, but each lease provided that default on either one would allow lessor to exercise default rights under both. The leases differed, however, in how lessor was to give notice if he wished to exercise such rights. Article XI of the restaurant lease provided that in the case of an "Event of Default," which included nonpayment of rent for a specified period:

> Lessor . . . may give written notice to Lessee specifying the occurrence giving rise to such Event of Default . . . and stating that this Agreement and terms hereby demised shall expire and terminate on the date specified in such notice, which shall be at least twenty (20) days after the giving of such notice . . . .

It went on to describe how lessee could cure the default before that specified date.

¶ 4. Article 5 of the condominium lease, by contrast, provided:

> If the Lessee shall neglect or fail to perform any of its covenants, and in particular if any monthly installment of rent be overdue and unpaid, the Lessor may, immediately or at any time thereafter, give notice pursuant to State statutes for Lessee to vacate the premises . . . .

¶ 5. Article XIII of the restaurant lease contained a "survival clause," whereby:

> No expiration of the term of this Lease or repossession of the Leased Premises by reason of an Event of Default shall relieve Lessee of its liability and obligations under this Lease, all of which shall survive any such expiration or repossession.

That same article contained a provision for liquidated damages. It continued:

> In the event of any such expiration, Lessee shall be liable to Lessor for, and shall pay to Lessor, as and for liquidated and agreed damages for Lessee's default . . . .

The liquidated damages included the "total accelerated unpaid portion of the rent," as well as interest, court costs, and attorney's fees.

¶ 6. Lessee fell behind on the rent payments, and as of March 5, 2010, was in default on both leases. On that date, lessor sent what was characterized as a notice of default on both leases to lessee's address by certified mail. It is not clear why the Postal Service's three attempts at delivery on March 6, 16, and 22 failed, but whatever the reason, notice was either not accepted or not received by the lessee, and the Postal Service eventually stamped the envelope "unclaimed." After having learned about the failed delivery, lessee called lessor to discuss it. Although details of the conversation are not in the record, lessee apparently learned that he was about to be evicted from both properties. Lessor and lessee disagree as to whether and/or when lessee requested that the notice be emailed to him.

¶ 7. There is no disagreement, however, as to the form and content of the notice, which was emailed to lessee on March 28, 2010, and submitted into evidence. The notice referenced both leases and informed lessee that he was "in default" of each. It did not provide a date of termination or give any details as to the alleged default. It reminded lessee that he had the opportunity to bring the lease payments current.

¶ 8. On March 28, 2010 — the same day that he emailed the notice — lessor locked lessee out of both premises. After that date, he did not allow lessee to access the properties to retrieve any items. This action began when the Vermont Small Business Development Corporation (VSBDC) filed suit against both lessor and lessee based on a default on a loan to lessee. Lessor then cross-claimed against lessee for rent, damages, utility costs, interest, and attorney's fees. Lessee, in turn, cross-claimed against lessor for lost profits due to a wrongful eviction and conversion of personal property left on the premises. The suits by VSBDC settled as to both defendants, but the case between lessor and lessee continued.

¶ 9. The superior court granted partial summary judgment to lessee, holding that lessor had wrongfully evicted lessee from the premises. The rest of the claims were tried before a jury. After evidence was presented, the court entertained for the first time the question of whether lessee was liable for rent for the restaurant property for the remaining period of the lease — that

is, for post-eviction rent. We do not have transcripts of the trial testimony and events, but the trial court's order on the resulting motion states that the issue was first raised by lessee's counsel. Lessor submitted a memorandum in which he conceded that lessee was not liable for post-eviction rent on the condominium, but argued that under Article XIII of the restaurant lease, lessee was liable for post-eviction rent on that property. Lessee similarly submitted a memorandum, taking the opposite position with respect to the restaurant lease. During the charge conference, the court decided not to give a clear legal instruction on this question to the jury,[1] including instead: "[Lessors] claim they are entitled to full satisfaction of all obligations under the entirety of the [restaurant] lease contract. You will calculate [lessor]'s damages as what you determine to be the total amount of unpaid rent and utilities." However, the court advised both parties that it would entertain a motion for judgment as a matter of law on this issue after the verdict.

¶ 10. The jury awarded lessor past rent and past utility costs for both the restaurant and the condominium, but did not award damages for nonpayment of post-eviction rent or utility fees for either property. It also declined to award damages to lessee for the wrongful eviction, for lessor's failure to return the security deposit, or for punitive damages, for either property.

¶ 11. As had been discussed during the charge conference, lessor filed a post-trial motion asserting that the trial court erred in failing to instruct the jury that lessor was entitled to prospective rent or damages for loss of post-eviction rent under the restaurant lease, and further that the jury miscalculated damages for both properties. The trial court denied the motion on both bases.

¶ 12. Lessor appeals both the partial summary judgment order finding that the eviction from the restaurant was wrongful[2] and the finding on the post-trial motion that lessee was not liable to lessor for post-eviction rent or for liquidated damages under the

---

[1] What transpired is set out in lessor's post-trial motion of December 1, 2011. Lessee has not disputed the representation of the events. There is no transcript of the charge conference.

[2] Although lessor argued during the summary judgment proceedings that the notice of default was proper as to the condominium lease as well, he concedes on appeal that it was not, and that the eviction from the condominium was therefore wrongful.

restaurant lease.[3] We review a summary judgment order using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. V.R.C.P. 56(a); *Richart*, 171 Vt. at 97, 758 A.2d at 321. The question of liability for post-eviction rent after a wrongful eviction is a legal question that we review de novo. See *Breslin v. Synnott*, 2012 VT 57, ¶ 8, 192 Vt. 79, 54 A.3d 525.

¶ 13. We first address whether the trial court correctly ruled on summary judgment that lessor's eviction of lessee from the restaurant was wrongful.

■ ¶ 14. Lessor locked lessee out of both properties on March 28, 2010. Lessor had mailed the notice of default on March 5, 2010. Lessor relies on Article XI of the restaurant lease, which provides that the termination date "shall be at least twenty (20) days after the giving of . . . notice [of default]," in combination with Article XXIV of the lease, which states that "[a]ny notice herein required or permitted to be given shall be deemed given if and when mailed . . . properly addressed to the party to whom such notice is given," to assert that lessee had until March 25, 2010 "to cure the lease or prepare to vacate the property." In lessor's understanding, then, he had a right to evict lessee from the restaurant when he did so on March 28, 2010, and the trial court should not have granted summary judgment on the issue of wrongful eviction from that property. Lessor makes two argu-

---

[3] Lessor also includes a section in his brief in which he disputes testimony presented by lessee at trial regarding a purported oral proposal to modify the contracts to allow lessee to pay less rent. He states that lessee did not present any evidence that lessor ever assented to his proposal, so "[lessor] cannot be deemed to have been bound by [lessee]'s proposal." He refers particularly to testimony by lessee that the security deposits were reallocated to rent in arrears.

The trial court never found that there had been such an oral agreement, so it is unclear to what error lessor is referring, beyond perhaps allowing the jury to hear such argument. As this section of the appeal does not cite any error by the trial judge in a ruling or explain on what basis this testimony should have been excluded, we need deal with it no further.

Lessor makes an additional argument in his brief that the jury's computation of past rent for both the restaurant and the condominium was wrong. He made the same argument in the post-trial motion. The trial court properly ruled that the issue had not been preserved, and we will also not address this issue.

ments on appeal: (1) the notice of default itself was not defective under the restaurant lease; and (2) lessee waived his argument that the notice was defective under the restaurant lease by not accepting delivery of the notice of default. As lessor did not raise the second argument during summary judgment proceedings, we need take up only the first. See *Lane v. Town of Grafton*, 166 Vt. 148, 153, 689 A.2d 455, 457 (1997) ("Failure to raise a reason why summary judgment should not be granted at the trial level precludes raising it on appeal.").

■ ■ ¶ 15. Our law is clear on the necessity of strict compliance with terms in a lease in order to effectuate an eviction: "In Vermont, when a lease expresses an agreement with regard to notice of termination, the time, mode and manner of such notice must conform to the agreement." *Deschenes v. Congel*, 149 Vt. 579, 583, 547 A.2d 1344, 1346 (1988); see also *Archambault v. Casellini-Venable Corp.*, 115 Vt. 30, 32, 49 A.2d 557, 558 (1946) ("When a lease expresses an agreement for notice, the time, mode and manner must conform to it."). With respect to the termination of residential leases, we have followed the trend in other jurisdictions to require "punctilious compliance with all statutory eviction procedures, including notice provisions." *In re Soon Kwon*, 2011 VT 26, ¶ 14, 189 Vt. 598, 19 A.3d 139 (mem.) (quotation omitted). There is no reason to require less "punctilious compliance" with terms of a lease providing for notice in the nonresidential context. Therefore, we must evaluate whether the notice provided by lessor conformed to the terms of the restaurant lease quoted above.

■ ¶ 16. Clearly, it did not. The notice of default was defective in two ways. First, although the terms of the restaurant lease clearly require lessor to "specify[] the occurrence giving rise to [the] Event of Default," it failed to do so. Second, although the restaurant lease provides that the notice must "stat[e] that this Agreement and terms hereby demised shall expire and terminate *on the date specified in such notice,*" lessor did not specify any such date. (Emphasis added.) Lessor argues that "the date specified" should be assumed to be March 25, 2010, because that is twenty days after the date of the letter, March 5, 2010. However, the lease states that the date of termination must be "*at least* twenty (20) days after the giving of such notice." (Emphasis added.) We cannot read that language as setting the date of

termination at twenty days after the date of the notice. We agree with the trial court that the notice of default for the restaurant lease was defective.

¶ 17. Under the terms of the lease, proper termination requires a valid notice to terminate. Because the notice of termination of the restaurant lease was defective, we affirm the trial court's finding on summary judgment that lessor's eviction of lessee from the restaurant was wrongful.

¶ 18. The second issue on appeal is whether the trial court erred by not giving an instruction to the jury that lessee was liable to lessor for rent due under the restaurant lease for the period between the wrongful eviction and the end of the lease term. As discussed above, the jury instructions read, in pertinent part: "[Lessors] claim they are entitled to full satisfaction of all obligations under the entirety of the [restaurant] lease contract. You will calculate [lessor]'s damages as what you determine to be the total amount of unpaid rent and utilities." The jury declined to award damages for nonpayment of rent for the period after the eviction. Lessor argues on appeal, as he did in his post-trial motion, that the trial court should have instructed the jury that lessee was liable for rent during that period. He bases his argument (1) on the "survival clause" in Article XIII of the restaurant lease that states that "[n]o expiration of the term of this Lease or repossession of the Leased Premises by reason of an Event of Default shall relieve Lessee of its liability and obligations under this Lease, all of which shall survive any such expiration or repossession," and (2) on the clause in that same Article providing for liquidated damages in the amount of all unpaid rent in the event of default.

¶ 19. The trial court rejected lessor's position primarily based on the holding of *Powell v. Merrill*, 92 Vt. 124, 103 A. 259 (1918). The issue in *Powell* was identical to the issue here — whether the landlord could collect post-eviction rent from a commercial tenant when the eviction was wrongful. This Court answered that the wrongful eviction suspended the landlord's right to collect rent, drawing on decisions from the English courts and courts around this country. *Id.* at 127, 103 A. at 260-61. Finding the eviction to be wrongful, we affirmed a decision to deny the landlord post-eviction rent. *Id.* at 129, 103 A. at 261.

¶ 20. Lessor's answer is that lease terms can vary the common law rule expressed in *Powell*, and that occurred in this

case. We can find no precedent that would allow collection of future rent based on a wrongful eviction because of language in a lease, particularly language allowing recovery of future rent as liquidated damages. There are, however, cases to the contrary. See *Bryan v. Vaughn*, 579 S.W.2d 177, 181 (Mo. Ct. App. 1979) ("[T]he lease ended by the wrongful act of plaintiffs, constituting an eviction, and in such circumstances plaintiffs are in no wise entitled to liquidated damages."); *Benderson v. Poss*, 530 N.Y.S.2d 362, 363 (App. Div. 1988); *Cox's Bakeries of N.D., Inc. v. Homart Dev. Corp.*, 515 S.W.2d 326, 329-30 (Tex. Ct. App. 1974) ("We are not overlooking the provision in the lease to the effect that the tenant's default could give rise to a termination of his right of possession without relieving him of his obligation for unaccrued rentals. However, reliance by the landlord upon this lease provision cannot be justified unless it be shown that he was not guilty of wrongful eviction . . . ."); see also *Fuel Mktg., Inc. v. Petroleum Realty Inv. Partners*, 601 S.E.2d 125, 127 (Ga. Ct. App. 2004) (even after lawful eviction, landlord cannot collect liquidated damages award based on future rent). As the trial judge observed, allowing liquidated damages when a landlord unlawfully terminates a tenancy "would give Lessor the unilateral right to terminate at any time for any reason regardless of any default *and* impose a large penalty on Lessee." Such a result would be unjust in any case; it is particularly unjust where the lessor terminates the tenancy by denying access to the business property and thereby prevents the lessee from earning income to pay the rent.

■ ■ ¶ 21. Even if we were to find that lease terms can make *Powell* inapplicable, we would not do so in this case. We not only agree with the Court of Appeals of Georgia that such a provision would have to be " 'an explicit and detailed provision . . . which clearly and unequivocally expressed the parties' intention to hold the lessee responsible for after-accrued rent even should an eviction take place,' " *Fuel Marketing, Inc.*, 601 S.E.2d at 127 (quoting *Bentley-Kessinger, Inc. v. Jones*, 367 S.E.2d 317, 318 (Ga. Ct. App. 1988)), but furthermore conclude that the provision would have to cover clearly and unequivocally an unlawful eviction. Lessor believes that the survival clause's extension of liabilities under the lease and provision for liquidated damages in the circumstance of "repossession . . . by reason of an event of default" is such a provision. However, Article XI, which defines

"event of default," also includes the requirements for terminating the lease by reason of such an event — requirements with which lessor failed to comply, as we held above. We cannot hold that the language of Article XIII "clearly and unequivocally" covers an unlawful eviction. Consequently, where lessor did not properly terminate the tenancy, he is entitled neither to rent for the premises after the wrongful eviction nor to a large liquidated damages award based upon lessee's default in paying past rent. We conclude that there was not a "repossession of the Leased Premises by reason of an Event of Default" as required by Article XIII. Accordingly, we uphold the trial court decision that lessor cannot collect post-eviction rent, whether labeled as such or as liquidated damages.

*Affirmed.*