2005 VT 48

**William ANDRUS v. Ken DUNBAR**

[878 A.2d 245]

No. 03-438

¶ 1. April 13, 2005. Tenant, Ken Dunbar, appeals a trial court order denying his motion to dismiss and granting judgment of eviction and damages to landlord, William Andrus. On appeal, tenant claims that the court lacked jurisdiction to evict him because landlord's notices to vacate were defective, and the court

erred in not ruling on his motion to dismiss before conducting a merits hearing and ruling on the substantive issues. We reverse and enter judgment for tenant.

¶ 2. Tenant resided with his son in a building owned by landlord pursuant to a written lease dated October 25, 2002 and beginning November 1, 2002. The contracted rent was $750 per month, to be paid on the first of each month. Tenant paid the first month's rent and a security deposit equal to a month's rent. After January 2003, tenant paid no further rent. On May 1, 2003, landlord delivered a notice to tenant that read in part:

> In accordance with Section 4467 of title 9 of the Vermont Statutes Annotated and Section 8 of your lease agreement dated October 25, 2002, with William Andrus; I am writing to notify You that William Andrus is terminating your tenancy at 12:00 Midnight on May 31, 2003.
>
> . . . .
>
> Would you please call William Andrus and see if you can work out a payment plan before this action has to be taken.

Landlord, through his attorney, sent another letter to tenant on June 12, 2003, specifying that the "tenancy . . . is terminated on July 5, 2003" and that the "tenancy is being terminated for nonpayment of rent." It notified tenant that he could "prevent the termination of . . . [his] tenancy for nonpayment of rent" if he paid all the rent in arrears by the termination date. It also added that the "notice is independent of any other notices to quit you may receive . . . . [and] does not extend or alter times or obligations stated in any other notices to quit."

¶ 3. On June 17, 2003, landlord filed an eviction action, asking for a writ of possession and direct and consequential damages, including back rent and associated costs. Tenant represented himself in

the action, but consulted Legal Services Law Line. Pursuant to their advice, he filed a V.R.C.P. 12(b)(6) motion to dismiss on July 7, 2003, claiming that the court had no jurisdiction over the matter due to insufficiency of the notices to quit. Tenant argued that the first notice, dated May 1, was insufficient because it did not contain the reason for termination of the tenancy. Tenant further argued that the June 12 notice could not provide jurisdiction because landlord filed for eviction before the termination date of July 5.

¶ 4. Landlord filed a motion to escrow the monthly rent due from tenant during the court proceedings. The court held a rent escrow hearing on July 8, 2003 and issued a rent escrow order. At the hearing, tenant asked the court about his motion to dismiss. The court read the motion for the first time at the hearing and orally stated "I'm not going to consider this today. . . . I think I'll rule on it at trial." The entry order form from the hearing indicated that one motion was considered, "plaintiff's motion for payment of rent into court," and the result was that an "escrow order issued." Neither it nor the docket sheet shows any entry regarding the motion to dismiss.

¶ 5. On July 17, the trial court set a one-hour merits hearing for July 25, 2003. Tenant then filed a motion to continue, asserting that he was still waiting for the court to rule on his motion to dismiss and requesting a chance to do discovery to prepare his counterclaim regarding race discrimination. An affidavit of defendant, attached to the motion, indicated that if the motion to dismiss was denied he was "planning to file an answer with counterclaims regarding racial discrimination." Tenant is of African and Native American descent, and he claims that landlord harassed him during the tenancy because of his race and treated him differently from other tenants. He also claims that the eviction was motivated by racial discrimination.

¶ 6. The court did not rule on the motion to continue, but the merits hearing was postponed until August 11, 2003 because a judge was not available. Tenant again filed a motion to continue, requesting time to do discovery and again reiterating that he was waiting for a ruling on his motion to dismiss. Tenant never filed an answer, counterclaims, or a jury demand.

¶ 7. The trial court considered the motions to continue for the first time at the merits hearing. On August 19, 2003, the trial court issued a written order denying the motion to dismiss and granting judgment in landlord's favor for both possession and damages. Tenant filed a motion for a new trial claiming that the merit's hearing took place before his answer was due, and therefore he never had the opportunity to raise his counterclaim or request a jury trial. The trial court issued a writ of possession that was temporarily stayed, pending application to the Supreme Court. This Court denied tenant's stay on October 21, 2003. Subsequently, the superior court issued a writ of possession, and tenant was evicted pursuant to this writ.

¶ 8. On appeal, tenant argues that the eviction was improper because landlord failed to send a proper notice to terminate the tenancy and, in any event, the trial court abused its discretion by orally postponing the motion to dismiss, denying tenant time to pursue discovery and prematurely scheduling the merits hearing before the answer was due and before tenant could file a counterclaim.

¶ 9. Tenant argues that the superior court has no jurisdiction over an eviction action unless proper notice is served in accordance with statutory requirements. 9 V.S.A. § 4467(a) (allowing termination for nonpayment of rent fourteen days after actual notice to tenant). Landlord responds that the notice requirement is not jurisdictional, rather proper notice is

a prerequisite to a landlord's ability to claim a possessory remedy.

¶ 10. We agree generally with tenant without resting our decision on jurisdictional grounds. Although the legal relationship between landlords and tenants is governed by the Residential Rental Agreements Act, 9 V.S.A. §§ 4451-4469, the action for possession must be brought pursuant to the ejectment statute in chapter 169 of Title 12, normally 12 V.S.A. § 4851. See 9 V.S.A. § 4468 (granting landlords an action for possession under Title 12 if tenant remains in possession after termination of the lease). The ejectment statute allows an action for possession where the former lessee "holds possession of the demised premises without right, after the termination of the lease." 12 V.S.A. § 4851. The nature of the action, and its elements, is described in detail in *Sabourin v. Woish*:

> It provides a summary remedy for a landlord whose tenant holds over without right after the determination of the lease. It lies where common law ejectment would lie. It is given for wrongful holding over of demised premises, and thus has all the characteristics of ejectment. The action sounds in tort. All the provisions of the statutes creating and allowing justice ejectment ... proceed upon the supposition that the lease is at an end. It is only when the lessee holds without right after the determination of the lease that a plaintiff can resort to the remedy.

116 Vt. 385, 387, 78 A.2d 333, 334 (1950) (citations omitted); accord *State v. Fisher*, 134 Vt. 339, 341, 360 A.2d 102, 104 (1976) (reiterating *Sabourin* requirements); *Strengowski v. Gomes*, 128 Vt. 555, 557, 268 A.2d 749, 750 (1970) (same).

¶ 11. Tenant argues that the lease was not terminated, as required by § 4851, because the May 1, 2003 notice was inadequate, and even if it was adequate, it was rendered void by the issuance of a subsequent notice delivered on June 12, 2003 and containing a termination date of July 5, 2003. Tenant further argues that the June 12 notice did not terminate the tenancy because the landlord served the ejectment complaint before the termination date specified in the notice. Landlord agrees that the June 12 notice was inadequate, but argues that the May notice was sufficient and remained in effect despite the subsequent June notice.

¶ 12. We conclude that the landlord's second notice voided the May 1 notice, and therefore do not reach tenant's other alleged deficiencies in the May 1 notice. In the past, this Court has decided that a landlord waives his right to forfeiture as a matter of law if he receives rent accruing after the forfeiture. *Mayo v. Claflin*, 93 Vt. 76, 80, 106 A. 653, 655 (1919); *Maidstone v. Stevens*, 7 Vt. 487, 491 (1835). We explained in *Mayo* that when a landlord accepts rent this conduct "unequivocally recognize[s] the tenancy as existing" on the last date of the payment period. 93 Vt. at 81, 106 A. at 655. Thus, the landlord waived the notice to quit and the right to termination. *Id.*; see also *Rosenberg v. Taft*, 94 Vt. 458, 465, 111 A. 583, 586 (1920) (holding that acceptance of rent waived "right of re-entry for prior breaches of covenant"). The rationale of *Mayo* applies here.

¶ 13. The second notice to quit "unequivocally recognized the tenancy as existing," as explained in *Mayo*. This is the holding of *Morgan v. Powers*, an early New York case. 31 N.Y.S. 954, 956 (Gen. Term 1894) (issuing a second notice was "an admission that a tenancy still subsists, and is a waiver of the first notice"); see also *28 Mott Street Co. v. Summit Imp. Corp.*, 316 N.Y.S.2d 259, 263 (Civ. Ct. 1970). This holding is rooted

in the principle that the tenant cannot be put in the position of having to speculate on the meaning and legal effect of the landlord's actions. See *Hawaiian Elec. Co. v. DeSantos*, 621 P.2d 971, 975 (Haw. 1980) ("[T]echnical accuracy in the wording of a notice [to terminate a tenancy] is not required but the notice must be so certain that it cannot be reasonably misunderstood."); *123 West 15, LLC v. Lafayette Compton*, 2004 WL 1924042, at *1 (N.Y. App. Term July 29, 2004) (per curiam) (unpublished disposition) (noting that "tenant should not be placed in the position of having to parse equivocal notices"); see also *Lantz v. Metaxas*, 266 N.Y.S.2d 313, 315-16 (Civ. Ct. 1965) (holding that notice of rent increase was not valid when issued during pendency of termination proceeding because it "left the tenant in an equivocal position").

¶ 14. Landlord urges us to rely on the language of the June 12 notice specifying that the notice is independent of other notices to quit and does not extend or alter the times or obligations in other notices. Landlord asserts that he should be able to send "multiple notices, for multiple infractions and issues; each with different termination dates." We do not dispute this principle, but find it inapplicable here. As landlord argues, both notices were for nonpayment of rent. The logical reading of the second notice is that landlord did not consider the lease terminated until July 5, and tenant could avoid termination by paying the rent before that date. See 9 V.S.A. § 4467(a) (allowing tenant to avoid termination if tenant pays back rent by the termination date). The language on which landlord relies only creates confusion about landlord's intent.

¶ 15. Because the tenancy had not been terminated on the date that the landlord brought the ejectment action, the trial court should have entered judgment for tenant. Further, the damages action is derivative of the ejectment action, see 12

V.S.A. § 4854 (*"If the court finds that the plaintiff is entitled to possession of the premises* the plaintiff shall have judgment for possession and rents due . . . ." (emphasis added)), and, therefore, the damages aspect of the judgment also cannot be sustained.

¶ 16. The tenant also appeals the court's failure to allow his counterclaim before it entered judgment for landlord. Because this issue may recur, we address it. Tenant argues that he was denied the opportunity to formally present the counterclaim because the court never ruled on his motion to dismiss. The landlord responds that the trial court properly deferred action on the motion to dismiss, the court considered the motion at the hearing on the merits, and the tenant waived the opportunity to file a counterclaim by failing to do so within ten days of the court's postponement. Tenant responds that the court did not properly postpone action on the motion.

¶ 17. The motion tenant filed in this case was titled a motion to dismiss for failure to state a claim under V.R.C.P. 12(b)(6).* Such a motion is a challenge to a claim's legal validity, not its factual support. *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002). A defendant who files such a motion is not required to file an answer until ten days after notice that the motion is denied or that its disposition is postponed until the trial on the merits. A counterclaim is included as part of an answer. See V.R.C.P. 7(a) (defining pleadings), 13(a), (b) (specifying that counterclaims are stated in pleadings).

---

* The motion did not bring in new evidence. Landlord was required to attach the notices to terminate to his complaint, 12 V.S.A. § 4852, and did so. Tenant's motion challenged the sufficiency of those notices.

¶ 18. The superior court never explicitly ruled on tenant's motion to dismiss and never considered the issues raised in it until the merits hearing. Landlord argues, however, that the court, at the rent escrow hearing, postponed action on the motion, and this ruling triggered tenant's obligation to file an answer and any counterclaims within ten days. We agree that the court thought it would make this ruling, but cannot agree that it did so. The court issued no written ruling to this effect, and the docket entries contain no statement of an oral ruling. See V.R.C.P. 79(a) (requiring all "orders" to be entered in the civil docket and docket entries to show "the nature and subject matter" of each order of the court).

¶ 19. We are persuaded by the direction of the Alabama Supreme Court to the bench and bar with respect to Rule 12(b)(6) motions:

> [W]e think it important for both bench and bar to note that Rule 12 contemplates affirmative action by the trial court on pretrial motions: the trial court should deal with such motions in as unequivocal language as possible in order that the movant not be left guessing as to when his answer is due. Only clear rulings by the trial court can prevent abuse of the rules by either the moving or the non-moving party in regard to the time requirements of the rules.

*Ex parte U.S. Gypsum Co.*, 533 So. 2d 557, 560 (Ala. 1988) (footnote omitted); see also *Barrett v. United States*, 105 F.3d 793, 795 (2d Cir. 1997) (noting that although court can make handwritten order on a paper filed by a party, "care must be taken, especially where a party is proceeding pro se, to ensure that the order and its consequences are communicated clearly"). Tenant had no responsibility to file an answer and counterclaims

until ten days after the court ruled on the motion to dismiss or "explicitly" postponed action on it to the hearing on the merits. *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir. 1985). We cannot find an explicit postponement here.

*Reversed and judgment entered for defendant.*