E & E Properties, Inc. v. Tatro, No. 509-12-11 Bncv (Hayes, J., Apr. 11, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Bennington Unit | Docket No. 509-12-11 Bncv |

E & E Properties, Inc.
  Plaintiff

v.

Rebecca L. Tatro
  Defendant

DECISION ON MOTION TO DISMISS

In this case, plaintiff seeks to evict defendant from her apartment at 302 Pleasant Street in Bennington, Vermont. Plaintiff served defendant with a termination letter on November 14, 2011. Defendant did not vacate the apartment, and this suit followed. Defendant filed a motion to dismiss the complaint for failure to state a claim on January 20, 2012. Plaintiff responded on February 21, 2012. Defendant filed a reply on March 19, 2012. The court heard oral argument on the motion on March 30, 2012. Plaintiff is represented by Ray Bolton, Esq., and defendant is represented by Rebecca Fay, Esq.

STANDARD OF REVIEW

Motions to dismiss are not favored, and are rarely granted. *Gilman v. Maine Mutual Fire Ins. Co.,* 2003 VT 55, ¶ 14, 175 Vt. 554 (mem.). The purpose of a motion to dismiss is to test the law of the case, not the facts which underlie the complaint. *Kane v. Lamothe,* 2007 VT 91, ¶ 14, 182 Vt. 241. In considering a motion to dismiss, the court assumes all factual allegations in the complaint to be true and gives the benefit of all reasonable inferences to the non-moving party. *Richards v. Town of Norwich,* 169 Vt. 44, 48 (1999). A motion to dismiss should not be granted unless it is beyond doubt that there exist no facts or circumstances which would entitle the plaintiff to relief. *Assoc. of Haystack Property Owners, Inc. v. Sprague,* 145 Vt. 443, 446-47 (1985).

BACKGROUND

For the purposes of this motion, the relevant facts are as follows: Plaintiff owns an apartment complex at 302 Pleasant Street in Bennington, Vermont. Defendant is a tenant at plaintiff's complex, renting apartment #3. On November 14, 2011, plaintiff notified defendant that her lease was being terminated. The termination notice contained two sections. In the first, plaintiff notified defendant that her lease was being terminated for cause:

> Please be advised that pursuant to 9 V.S.A. Section 4467(b)(1) your tenancy will be terminated 30 days from the date upon which you receive this notice for failure to comply with obligations imposed under Title 9 V.S.A. Chapter 127 in that you have repeatedly contributed to the non compliance of the dwelling unit with applicable provisions of building, housing and health regulations in violation of Title 9 V.S.A. Section 4456(a).
>
> You are advised to vacate the premises on or before 30 days from receipt of this notice.
>
> In the event that you have not vacated the premises on or before 30 days from receipt of this notice, eviction proceedings and a civil lawsuit will be commenced against you.

In the second section, separated from the first by several line breaks, plaintiff notified defendant that her lease was being terminated under the no-cause provisions of Title 9:

> Additionally, please be advised that pursuant to 9 V.S.A. Section 4467(c) and [9] V.S.A. Section 4467(e)[1] your tenancy will be terminated 90 days from the date upon which you receive this notice.
>
> You are advised to vacate the premises on or before 90 days from receipt of this notice.
>
> In the event that you have not vacated the premises on or before 90 days from receipt of this notice, eviction proceedings and a civil lawsuit will be commenced against you.

After receiving the notice of termination, defendant did not vacate apartment #3. Plaintiff filed this suit on December 30, 2011. The complaint contains two counts: (1) a count for cause eviction under 9 V.S.A. § 4467(b)(1); and (2) a count for no-cause eviction under 9 V.S.A. § 4467(e), anticipating that defendant would be in violation of the section by the time the case was heard. In its initial complaint, plaintiff

---

[1] 9 V.S.A. § 4467(c) provides for no-cause eviction where no written lease exists, while 9 V.S.A. § 4467(e) provides for no-cause eviction under a written lease. Since plaintiff and defendant had a written lease, the appropriate provision is 9 V.S.A. § 4467(e).

specifically put the phrase (anticipatory/effective hearing date) at the end of the allegations that alleged the no-cause basis for termination of the tenancy. On February 21, 2012, plaintiff filed a motion to amend its complaint, restating count two of the complaint but deleting this parenthetical language.

DISCUSSION

In her motion to dismiss, defendant makes four arguments. First, she argues that the termination notice was defective because it failed to provide a calendar date by which she must have vacated her apartment. Second, she argues that the termination notice was vague and confusing because it included two grounds for eviction, each of which listed a different date by which defendant must have vacated her apartment. Third, she argues that Count I of the Complaint should be dismissed because the termination notice failed to specify exactly how defendant failed to comply with housing regulations, and did not include citations to those regulations. Fourth and finally, she argues that Count II of the Complaint should be dismissed because it was filed before the 90-day notice period had ended.

**Failure to Specify a Calendar Date**

In her first argument, defendant asserts that in order for a notice of termination to be valid, it must specify a calendar date by which the tenant must vacate the apartment. Defendant finds support for her assertion in 9 V.S.A. § 4467(f), which states that "[i]n all cases the termination date shall be specifically stated in the notice." Additionally, 9 V.S.A. § 4467(b), applicable to for-cause terminations, makes reference to "the termination date specified in the notice." Defendant argues that the phrase "termination date," especially when coupled with the word "specifically," signifies that a landlord must include a calendar date in the notice of termination for it to be valid.

The court is aware of several trial-level decisions that support defendant's argument. See, e.g., *Memphremagog v. Ragusa*, No. 193-8-10 Oscv (Vt. Super. Ct. Feb. 14, 2011) (Bent. J.) ("Section 4467 requires specification of the actual date the tenancy will be terminated, not just a means to calculate that date."); *Rutland Housing Authority v. Wright*, No. 189-4-06 Rdcv (Vt. Super. Ct. May 27, 2006)

(Norton, J.) (dismissing an eviction complaint for failure to include a calendar date for termination). Additionally, at least one out of state court has interpreted a similar statute to require that landlords include a calendar date in a notice of termination. See *Hedco v. Blanchette*, 763 A.2d 639, 643 (R.I. 2000) (holding that where federal regulations required that a termination notice "specify the date the lease will be terminated," a notice specifying that the lease would be terminated "within ten (10) days" of receipt was ineffective).

In landlord-tenant cases, the Vermont Supreme Court has stressed that tenants "cannot be put in the position of having to speculate on the meaning and legal effect of the landlord's actions." *Andrus v. Dunbar*, 2005 VT 48, ¶ 13, 178 Vt. 554 (finding that successive termination notices for non-payment of rent with conflicting termination dates created confusion such that both notices were ineffective).[2] Defendant argues that failure to include a calendar date in the notice of termination creates the kind of confusion discussed in *Andrus*: "[W]ithout the termination date in this notice, the notice is unclear, forces the defendant to speculate on the meaning of the notice, and this is grounds to invalidate the notice."[3]

The court's task here is one of statutory interpretation. First, the court must "look to the language of the statute and seek to construe it according to its plain and ordinary meaning. Where the language is clear and unambiguous, we enforce the statute according to its terms." *Payne v. U.S. Airways, Inc.*, 2009 VT 90, ¶ 24, 186 Vt. 458 (citation omitted). If the terms of the statute are not sufficiently clear to illuminate the legislative intent behind it, the court looks to "the statute's subject

---

[2] The court in *Andrus* noted that landlords are entitled to evict on multiple, independent theories, using multiple notices with multiple termination dates, but found the principle inapplicable to the facts presented. *Andrus*, 2005 VT 48 at ¶ 14. The Vermont legislature confirmed that landlords are entitled to seek eviction on multiple theories using multiple notices when it enacted 9 V.S.A. § 4467(i) in 2007.

[3] While not dispositive, it should be noted that the court in *Andrus* was faced with an eviction proceeding for failure to pay rent, a curable ground for eviction. 9 V.S.A. § 4467(a). In this case, neither of plaintiff's theories for eviction may be cured under the statutes. *Id.* § 4467(j)(1). Because defendant could not have cured the conditions that gave rise to the eviction, there is reason to believe that the concerns underlying *Andrus* are not as relevant here.

matter, its effects and consequences, and the reason and spirit of the law." *State v. Kimmick*, 2007 VT 45, ¶ 12, 181 Vt. 635 (citation omitted).

While it is certainly helpful for landlords to include calendar dates in their notices of termination, the language of the statute does not demand it on its face. As used in 9 V.S.A. § 4467(f), date is defined as follows: "The day when an event happened or will happen." Black's Law Dictionary 422 (8th ed. 2004). Nothing in the definition of "date" suggests that it must take any particular form, such as a month and day followed by a year. So long as a particular day is conveyed in a statement, that statement satisfies the definition of date. For example, if one were to use the word "tomorrow" on January 1, it would have the same effect as using the calendar date of January 2.

Defendant argues that the presence of the word "specifically" in § 4467(f) is intended to mean that a calendar date is required. This is not apparent on the face of the statute. The term "specifically" implies that a certain level of precision is required in the statement of the date by which the tenant must vacate the apartment. A phrase such as "thirty days from the receipt of this notice" conveys the same level of specificity as would a calendar date – both clearly identify a particular day on which the tenant must vacate the apartment. Defendant urges that the proper meaning is something akin to explicit rather than precise. While that is one meaning of the word specific, is not the only meaning that can be taken from the face of the statute. Indeed, in light of the Vermont Supreme Court's concerns over vagueness and ambiguity in *Andrus*, one can interpret the term "specifically" in § 4467(f) as simply requiring a clear and unambiguous expression of the date.

Because the language of § 4467(f) is not unambiguous on its face, the court must take into account its subject matter, practical consequences, and spirit. *Kimmick*, 2007 VT 45 at ¶ 12. If § 4467(f) were interpreted to require a calendar date, landlords would be required, prior to effecting service, to predict an accurate calendar date by which a tenant would have to vacate the premises. Under Title 9, landlords may effect service of a termination notice either by in-hand delivery or by mail. 9 V.S.A. §

4451(1). If the landlord chooses to mail the notice, a rebuttable presumption arises that the notice was received three days after filing. *Id.* Given the variety of ways in which service can be achieved, and in light of the exigencies that may arise when attempting to effect service, it may be difficult for landlords to predict the proper calendar date to include when drafting a termination notice. For example, if a landlord chooses to utilize the local sheriff's department to effect service, as was done in this case and is typically done in civil lawsuits, the landlord has no way to predict when the in-hand delivery will occur. Even in cases where the landlord mails notice, and takes advantage of the rebuttable presumption in 9 V.S.A. § 4451(1), the tenant is still entitled to rebut that presumption by proving that there was some delay in actual receipt of the notice.

Given the uncertainty involved with making a prediction of the proper termination date when drafting a notice of termination, it is understandable that landlords would opt to express the termination date with reference to the date of receipt (whatever it may be), rather than as a calendar date. Expressing the termination date with reference to the date of receipt allows both the landlord and tenant to know the date by which the tenant must vacate the apartment.

For the foregoing reasons, this court finds that while in most cases it is preferable for a landlord to include a calendar date in the notice of termination, it is not required by statute. The failure to include a calendar date in the notice of termination in the instant case is not a ground for dismissal.

### Alternative Grounds for Termination With Different Termination Dates

Defendant next argues that the notice of termination in this case is defective because it alleged two grounds for eviction in the alternative, each of which specified a different termination date. In the first section of the notice, which alleged that defendant violated building and health codes, defendant was advised to vacate the apartment within thirty days or face an eviction proceeding. In the second section, purporting to evict under the no-cause statute, defendant was advised to vacate the apartment within ninety days or face an eviction proceeding.

Defendant argues that because plaintiff included alternative grounds for eviction with different termination dates in the same notice of termination, she was "put in the position of having to speculate on the meaning and legal effect of the landlord's actions." *Andrus*, 2008 VT 48 at ¶ 13. The principal inquiry here is whether the notice was so confusing that it did not afford plaintiff a clear understanding of the date by which she must vacate the apartment.

While individuals with legal training would likely understand that the two sections of the notice of termination in this case are alternative grounds for eviction, the same cannot be said for a layperson. Defendant was faced with a notice of termination that gave her two irreconcilable commands. First, it commanded her to vacate the premises within thirty days of receipt of the notice. Then, it commanded her to vacate the premises within ninety days of receipt of the notice. When faced with such a notice, a tenant is left to wonder when precisely he or she must vacate the premises.

The inclusion of two conflicting termination dates in the notice is a defect, but not a fatal one. Although it is true that defendant was left to wonder when exactly she needed to vacate her apartment, the notice presented her with only two choices: either within thirty days or within ninety days. Because of the ambiguity, defendant was entitled to rely on the ninety-day period. The record reflects, however, that defendant did not vacate the apartment within ninety days. Even allowing for the most lenient construction of the notice of termination in light of the ambiguity, defendant has still failed to comply, and plaintiff is still within its rights to seek an eviction in this court.[4]

**Lack of Specificity in Grounds for Breach**

Next, defendant argues that because the notice of breach fails to provide the specific facts underlying the grounds for termination, it is ineffective on its face, and therefore the case must be

---

[4] Here, as before, the relevance of the *Andrus* decision is limited because the concerns over ambiguity in *Andrus* were primarily motivated by the fact that the tenant would have been able to <u>cure</u> the defect if he were given an unambiguous notice of termination. See *Andrus*, 2008 VT 48 at ¶ 14 (noting that "could avoid termination by paying the rent" before the date on a notice of termination) (citing 9 V.S.A. § 4467(a)).

dismissed.  Defendant argues that the notice should have cited the specific regulations with which she failed to comply, and the actions that defendant had taken to violate those regulations.

In support of her argument, defendant relies on  a 1987 trial court decision from Washington County, *Allinson v. Davis*, No. 53-4-87 Wncv (Vt. Super. Ct. May 18, 1987) (Cook, J.).  In *Allinson*, the court dismissed an eviction complaint because the notice of termination stated only the following grounds: "You, personally, are a good tenant, but the behavior of your off-spring leaves me no choice." *Id.* at 1.  Defendant's reliance on *Allinson* is misplaced.  In that case, the ground stated in the notice of termination was <u>not</u> a ground for termination of a lease.  The notice in *Allinson* was defective not only for a lack of specificity, but also for the failure to specify <u>any</u> valid ground for termination.

In this case, plaintiff adequately asserted a ground for eviction under 9 V.S.A. § 4467(b)(1). Unlike the notice in *Allinson*, which did not allege any behavior for which a lease can be terminated, the notice in this case alleges a violation of 9 V.S.A. § 4456(a), which states: "The tenant shall not create or contribute to the noncompliance of the dwelling unit with applicable provisions of building, housing and health regulations."  9 V.S.A. § 4456(e) states: "If a tenant acts in violation of this section, the landlord is entitled to recover damages, costs and reasonable attorney's fees, and the violation shall be grounds for termination under section 4467(b) of this title."  The foregoing statutes, taken together, clearly allow for an eviction on the ground that the tenant has caused the apartment to be in noncompliance with building, housing, and health regulations.  Thus, it cannot be said that the notice of termination fails to specify a proper ground for eviction.

While the better practice is certainly to give a tenant a summary of the factual basis that is alleged to support the claimed breach of regulations, it cannot be said that the failure to do so causes a notice of termination to be defective on its face.  This is not to say that defendant is foreclosed from attempting to show that she did not violate any relevant regulations.  Defendant is still entitled to discovery, and may well be able to prove that the purported ground for eviction is not supported by

evidence. However, for the purposes of a motion to dismiss, the failure to include more specific information regarding the ground for breach is not a fatal defect in the notice of termination.

## Anticipatory Claim for No-Cause Eviction

Finally, defendant argues that Count II of the complaint should be dismissed because it was brought before the ninety day window to vacate closed.[5] Defendant analogizes this case to *U.S. Bank Nation Association v. Kimball*, 2011 VT 81, in which the Vermont Supreme Court upheld the dismissal of a foreclosure complaint because the bank consistently failed to produce evidence in the trial court that it held the mortgage note.

Defendant's reliance on *Kimball* is misplaced. While the court did uphold the dismissal of the foreclosure complaint in that case, it specifically noted that the bank had <u>continually</u> failed to produce evidence that it held the mortgage note in the trial court. Responding to the bank's argument that the defect could be cured using V.R.C.P. 17(a) to substitute the real party in interest, the court stated:

> The merit of this argument might have been better received by the trial court had it been supported by the necessary documentation and proffered before summary judgment was granted for defendant . . .[U.S. Bank] having failed to support its position, the court was not required to give U.S. Bank another opportunity to prove its case following the grant of summary judgment, and did not abuse its discretion in denying the request at that late stage in the proceeding.

This suggests that the defect in *Kimball* was not that the bank did not hold the note at the time it filed the complaint, but rather that it failed at all times in the trial court to produce evidence that it <u>ever</u> held the note. This is a different case. While it is true that defendant had not breached the conditions of the no-fault termination notice at the time the complaint was filed, there is evidence in the record to show that she is in breach now.

Additionally, while not the usual practice in eviction cases, anticipatory claims are filed regularly in Vermont courts in other contexts. For example, the Vermont Supreme Court has long held that in

---

[5] Since the court holds that defendant was entitled to rely on the ninety-day window to vacate in the notice of termination because of the multiple dates listed in the notice, this argument affects both the cause and no-cause theories of eviction.

divorce cases, a spouse may file a claim in anticipation of a ground for divorce being met. *Ragosta v. Ragosta*, 143 Vt. 107, 110 (1983) ("Clearly, litigants in divorce actions have long been permitted to file for divorce by alleging anticipatory grounds therefor. What is required is that, at the time of the hearing on the merits, the complainant must be able to prove sufficient facts to make out the claim alleged in the complaint.") (citations omitted).

It is not unusual, and indeed is quite common, for litigants to file for divorce alleging anticipatory grounds where the basis for divorce is a six-month period of separation. See *Dame v. Hall*, No. 2011-096, slip op. at 2 (Vt. Aug. 31, 2011) (unpublished mem.) (upholding a grant of divorce where husband objected that the grounds for divorce had not been met at the time the complaint was filed). The fact that complaints frequently allege anticipatory grounds in divorce cases suggests that the similar allegations of anticipatory breach in this case should be permitted.

ORDER

For the reasons explained above, Defendant's Motion to Dismiss (MPR # 1), filed January 20, 2012, is **denied**. The motion to amend the complaint is denied as moot, based on the conclusions stated above. The parties are invited to submit, within 15 days of receipt of this entry, an agreed discovery order, which will enable them to be ready for a hearing on the merits within 90 days of this entry. A one-hour hearing on the merits will be scheduled on that timeline.

Dated at Bennington, Vermont this 11th day of April, 2012.

_____
Katherine A. Hayes
Superior Court Judge

- 10 -