Filed 10/28/24

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03198

| Gondal Group of Motels Inc. v. Steven Burke |
|---|

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss  (Motion: 3)
Filer:        Eric J Fanning
Filed Date:   September 25, 2024

This is an ejectment action brought by plaintiff-landlord Gondal Group of Motels, Inc. against defendant-tenant Steven Burke.  Defendant has filed a motion to dismiss pursuant to V.R.C.P. 12(b)(1) and 12(b)(6) on grounds that a landlord must properly terminate a lease agreement before an action for ejectment of a tenant may lie, and the plaintiff did not do so in this instance because it failed to provide defendant with "actual notice" of termination as required by 9 V.S.A. §§ 4467(a) and (b)(2).  Plaintiff is represented by Attorney Antonietta Dutil and defendant is represented by Attorney Eric Fanning.  For the reasons stated below, the motion is granted.

### Standard of Review

Defendant has moved to dismiss pursuant to V.R.C.P. 12(b)(1) and 12(b)(6).  In determining a 12(b)(1) motion, "all uncontroverted factual allegations of the complaint [are] accepted as true and construed in the light most favorable to the nonmoving party." *Jordan v. State Agency of Transp.*, 166 Vt. 509, 511 (1997).  Such motions shall not be granted "unless it appears beyond doubt that there exists no facts or circumstances that would entitle the plaintiff to relief." *Murray v. City of Burlington,* 2012 VT 11, ¶ 2.  The same standard applies to motions under V.R.C.P. 12(b)(6). *Id.*  In accepting factual allegations a true, courts are "not required to accept as true conclusory allegations or legal conclusions masquerading as factual conclusions." *Colby v. Umbrella, Inc.,* 2008 VT 20, ¶ 10.  This court is also mindful of the Vermont Supreme Court's admonishment that "[m]otions to dismiss for failure to state a claim are disfavored and are rarely granted." *Id.,* ¶ 5.

### Factual Allegations

Plaintiff is a foreign for-profit corporation that is incorporated in New York.  Plaintiff owns 15 South Main Street in Fair Haven, Vermont.  Over two years ago plaintiff and the defendant entered into an oral lease agreement for Apartment 7 located at 15 South Main Street.  The oral lease agreement required monthly rental payments from defendant of $750.  Defendant failed to pay his monthly rent and continues to occupy Apartment 7.

Plaintiff attempted to mail a notice of termination to defendant, however it was returned to plaintiff. Plaintiff attempted personal service, but was unable to serve the defendant in hand. On July 18, 2024, plaintiff tacked the notice of termination to the door of Apartment 7. The notice informed the defendant his tenancy would terminate on August 5, 2024 for non-payment of rent and for criminal activity. Defendant did not vacate the apartment on August 5, 2024 and continues to maintain possession of the premises. This action was filed on August 16, 2024.

## Analysis

Plaintiff brought this action pursuant to the ejectment statute, 12 V.S.A. § 4851. *See* 9 V.S.A. § 4468 (granting landlords an action for possession "under 12 V.S.A. chapter 169, subchapter 3" if tenant remains in possession after termination of the lease). The legal relationship between landlords and tenants is governed by the Residential Rental Agreements Act ("RRAA"), 9 V.S.A. §§ 4451-68. Plaintiff sought to terminate defendant's lease under two provisions of the RRAA, 9 V.S.A. §§ 4467(a) and (b)(2), pertaining to non-payment of rent and criminal activity. Both section 4467(a) and section 4467(b)(2) require a landlord seeking to terminate a rental agreement to provide the tenant with actual notice of termination. The ejectment statute is also clear that it "allows an action for possession where the former lessee 'holds possession of the demised premises without right, after the termination of the lease.'" *Andrus v. Dunbar,* 2005 VT 48, ¶ 9 (mem.).

Thus, a landlord must first terminate the tenancy in a manner specified by law—i.e., with actual notice—before the landlord can bring an ejectment action. *See Andrus,* 2005 VT 48, ¶¶ 9-10. The requirement that a tenancy must be properly terminated through clear notice is "rooted in the principle that the tenant cannot be put in the position of having to speculate on the meaning and legal effect of the landlord's actions." *Id.* at ¶ 13; *cf. also* 4A A.N. Steinman, *Federal Practice & Procedure Civil* § 1095 (4th ed., June 2024 update) ("Historically, the usual and most effective method of service [of process] has been by personal delivery . . . This procedure avoids any question as to whether the defendant has received notice of the suit[.]").

Defendant has moved to dismiss the action, arguing he did not receive actual notice of the termination of his tenancy.[1] The Vermont Supreme Court has made clear that in ejectment actions, courts "have been insistent upon the landlord's punctilious compliance with all statutory eviction procedures, including notice provisions." *In re Soon Kwon,* 2011 VT 26, ¶ 14 (citations and quotations omitted). "Actual notice" is defined as "receipt of written notice hand-delivered or mailed to the last known address. A rebuttable presumption that the notice was received three days after mailing is created if the sending party proves that the notice was sent by first-class or certified U.S. mail." 9 V.S.A. § 4451(1). Although plaintiff mailed the notice of termination, that mailing was returned as undeliverable, and plaintiff proceeded to provide notice "Via Hand Delivery/Personal Tacking." Compl., Ex. 1. Plaintiff describes this process as "personally tacking the notice to Defendant's door." Compl. ¶ 7. The question for the court is whether "tacking" equates to "hand-delivered" under 9 V.S.A. § 4551(1).

---

[1] Defendant invokes both Rule 12(b)(1) and Rule 12(b)(6), but the Vermont Supreme Court in *Andrus* appeared to construe a tenant's motion to dismiss, arguing insufficient notice of lease termination, as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See* 2005 VT 48, ¶ 10 ("We agree generally with tenant without resting our decision on jurisdictional grounds.").

"In construing a statute, our paramount goal is to discern and implement the intent of the Legislature." *Miller v. Miller,* 2005 VT 89, ¶ 14. When the intent of the Legislature is clear and unambiguous, the court interprets the statute according to the plain language of the statute. *Flint v. Dep't of Labor,* 2017 VT 89, ¶ 5. "Conversely, if the statute is ambiguous, we ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." *Harris v. Sherman,* 167 Vt. 613, 614, (1998) (mem.). The definition of "actual notice" has a very narrow definition. *In re Soon Kwon,* 2011 VT 26, ¶ 18. A defendant may receive written notice of termination in myriad ways; however, a defendant only receives "actual notice" if the notice is either hand-delivered or mailed. 9 V.S.A. § 4551(1). The language of the statutory definition of "actual notice" is clear and unambiguous.

"Hand-delivery" requires that an individual personally receive a document physically in hand, from another individual. Merely tacking a notice of termination to an apartment door, without handing the notice to a tenant in person, does not meet the definition of receipt by "hand-delivery." This is consistent with the Civil Rule governing service of process. Rule 4(d)(1) of the Vermont Rules of Civil Procedure provides that:

> Personal service within the state shall be made . . . [u]pon an individual by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

Critically, the Rule continues, by stating that if, "on motion, upon a showing that service as prescribed above cannot be made with due diligence, [the court] may order service to be made by leaving a copy of the summons and of the complaint at the defendant's dwelling house or usual place of abode[.]" Service by tacking is permitted under this provision only if, despite the exercise of due diligence, personal service cannot be made by any of the other methods expressly described at the beginning of the provision. *See Cramer v. Billado*, 2017 VT 38, ¶ 14, 204 Vt. 551 (order allowing service of process by tacking permitted under Rule 4(d)(1) if, despite due diligence, service cannot be made through the other methods described in Rule); Reporter's Notes, V.R.C.P. 4 (tacking method permitted "only on motion and on showing of inability to make service by other methods").

Rule 4(d)(1) thus illustrates that service to an "individual personally" is analytically distinct from service by tacking. Rule 4 recognizes the distinction between service of legal notices by tacking, on the one hand, and by "hand-delivery," on the other. The court presumes that when the Legislature enacting the RRAA—which occurred in 1985 and well after Rule 4(d)(1)'s promulgation—the Legislature did so with awareness of the distinction between personal service and tacking. *See In re Town of Killington*, 2003 VT 87A, ¶ 13, 176 Vt. 60 (courts must assume the Legislature passes and amends "more topically focused" statutes with knowledge of pre-existing rules of court procedure that have "more general application").

Here, defendant's tenancy was not properly terminated because he was not provided actual notice of his termination, either by hand-delivery of the notice or by mailing of the notice. As such,

plaintiff was not entitled to commence this action and the case must be dismissed. *Andrus,* 2005 VT 48, ¶¶ 9-10.

Plaintiff argues this interpretation leads to an absurd result because it "would unfairly allow similarly situated tenants to perpetually avoid eviction by evading receipt of notice, with no meaningful recourse to landlords at the prelitigation stage." Pl.'s Mem. in Opp'n, at 4. Plaintiff is correct that courts interpret statutes "to avoid absurd and illogical results … when a plain reading of the statute would produce a result demonstrably at odds with any conceivable legislative purpose." *Fraser v. Sleeper,* 2007 VT 78, ¶ 12 (citations and quotations omitted). Yet the plain reading of 9 V.S.A. § 4551(1) does not result in absurd or illogical results. The Legislature adopted a narrow definition of actual notice. *In re Soon Kwon,* 2011 VT 26, ¶ 18.[2] That was, and remains, a policy decision of the Legislature. "[The court's] role is to interpret the law to give effect to the Legislature's intent, not to impose our policy preferences on the public." *McGoff v. Acadia Ins. Co.,* 2011 VT 102, ¶ 13. Although it may be difficult to provide actual notice to certain tenants by way of hand delivery or mailing, and without resort to tacking, that does not mean it is impossible. Thus, the court's construction of the law adheres to the Legislature's policy choice and does not lead to absurd outcomes.

## Conclusion

Plaintiff's motion to dismiss is GRANTED.

Electronically signed on October 28, 2024 pursuant to V.R.E.F. 9(d)

_Alexander N. Burke_

Alexander N. Burke
Superior Court Judge

---

[2] Thus, the Legislature has chosen *not* to follow the Judiciary's example, as set forth in Civil Rule 4(d)(1), which allows for tacking as a method of service of legal documents where service on the individual's person, and other methods of service, are not achieved despite the exercise of due diligence.