Filed 02/17/26

VERMONT SUPERIOR COURT

Windham Unit

7 Court Street

Newfane VT 05345

802-365-7979

www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-03994

---

## Upper Story Housing LP v. Charles Nestor

## FINDINGS OF FACT, DECISION AND ORDER

A final hearing on the merits of this ejectment action was held on January 26, 2026. Plaintiff was represented by Attorney Samantha Snow. Defendant appeared remotely and was self-represented. Testimony was taken from various witnesses and certain exhibits were admitted. At the conclusion of the hearing the court directed Plaintiff to file a post-hearing memorandum. That filing was made on February 6, 2026.

Vermont law "require[s] 'punctilious compliance with all statutory eviction procedures, including notice provisions.'" *Vermont Small Bus. Dev. Corp. v. Fifth Son Corp.*, 2013 VT 7, ¶ 15 (quoting *In re Soon Kwon,* 2011 VT 26, ¶ 14). Thus,

> a landlord seeking to terminate a rental agreement [must] provide the tenant with actual notice of termination. The ejectment statute is also clear that it "allows an action for possession where the former lessee holds possession of the demised premises without right, after the termination of the lease." *Andrus v. Dunbar*, 2005 VT 48, 1 9 (mem.).
>
> Thus, a landlord must first terminate the tenancy in a manner specified by law—i.e., with actual notice--before the landlord can bring an ejectment action. See *Andrus*, 2005 VT 48, ¶ 9-10. The requirement that a tenancy must be properly terminated through clear notice is "rooted in the principle that the tenant cannot be put in the position of having to speculate on the meaning and legal effect of the landlord's actions." *Id.* at ¶ 13; *cf. also* 4A A.N. Steinman, Federal Practice Procedure Civil § 1095 (4th ed., June 2024 update) (Historically, the usual and most effective method of service [of process] has been by personal delivery ... This procedure avoids any question as to whether the defendant has received notice of the suit[.]'").

*Crestmark Inc. v. Tuliper*, 2025 WL 2380235, at *1-2 (Vt. Super. Ct., Rut. Civ. Div. July 30, 2025) (Burke, Supr. J.). "[U]nder 9 V.S.A. § 4468, a landlord's right to seek ejectment under 12 V.S.A. § 4853 does not arise until the tenancy is terminated." *Garcia v. Birch*, 2024 WL 4328592, at *2 (Vt. Super. Ct., Cal. Civ. Div. Aug. 30, 2024) (Richardson, Supr. J.). "The ejectment statute allows an action for possession where the former lessee "holds possession of the demised premises without right, *after the*

1

*termination of the lease.*" 12 V.S.A. § 4851. *Andrus v. Dunbar*, 2005 VT 48, ¶ 10. See also *Sabourin v. Woish*, 116 Vt. 385, 387 (1950) (the ejectment statute "provides a summary remedy for a landlord whose tenant holds over without right after the determination of the lease"). Pursuant to 9 V.S.A. § 4468, "if the tenant remains in possession *after termination of the rental agreement* without the express consent of the landlord, the landlord may bring an action for possession, damages, and costs under 12 V.S.A. chapter 169, subchapter 3." The law is abundantly clear, "it is only when the lessee holds without right *after* the determination of the lease that a plaintiff can resort to the remedy." *Sabourin*, 116 Vt. at 387. Plaintiff must have terminated the lease and provided actual notice of the termination to Defendant tenant.

The evidence presented at the hearing established the following relevant facts:[1]

- In 2024 Defendant was living at 9 Canal St., Apt. 209, in Brattleboro, Vermont, pursuant to a lease with Plaintiff.

- On April 1, 2024, Plaintiff sent Defendant a letter including an annual recertification questionnaire and requiring Defendant to provide records by May 2, 2024.

- On June 11, 2024, Plaintiff sent Defendant a reminder letter referencing the April 1, 2024, letter. The letter noted that "cooperation with the recertification is a condition of continued occupancy" and required Defendant to provide records by July 2, 2024.

- On July 3, 2024, Plaintiff sent Defendant a reminder letter referencing the April 1 and June 11 letters. The letter noted that

  > So far you have not responded and are currently in violation of your lease.
  > …
  > If you do not respond or supply this information before July 18, 2024 your lease gives us the right to terminate your tenancy.

- On January 23, 2025, Plaintiff and Defendant entered into a lease for the unit at 9 Canal St., Apt. 209.

- On June 12, 2025, Plaintiff provided a notice of termination of tenancy to Defendant. The notice stated that

  > You are hereby notified that your tenancy at 9 Canal Street in Brattleboro, Vermont, is terminated. as of July 17, 2025.

---

[1] The court relies on the credible evidence adduced at the hearing in making these findings by a preponderance of the evidence.

We have previously issued written requests on April 1, 2024, June 11, 2024, July 3, 2024, asking you to provide the required income verification documentation as part of your annual recertification. To date, we have not received a response from you. ... As you have failed to comply with the income verification requirement, you are in violation of your lease.

A landlord may terminate your tenancy for breach of lease terms by providing at least 30 days notice.[2]

- The Notice was sent to Defendant by certified mail and hand delivered on June 12, 2025.

- Defendant remains in possession of the unit.

"Under Vermont law, a landlord 'may terminate a tenancy for failure of the tenant to comply with a material term in the rental agreement or with obligations imposed by statute, by actual notice given to the tenant at least 30 days prior to the termination date specified in the notice.'" *Emile J. Legere Management Co., Inc. v. Breed*, 2006 WL 6902439 (Vt. Super. Ct., Winds. Civ. Div. Dec. 01, 2006) (DiMauro, Supr. J.) (quoting 9 V.S.A. § 4467(b)).

In interpreting the lease

the "master rule" in the construction of written agreements (including written leases) "is that the intent of the parties governs." *Hall v. State,* 2012 VT 43, ¶ 21, 192 Vt. 63, 54 A.3d 993 (quoting *Main Street Landing, LLC v. Lake St. Ass'n,* 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.)). "In discerning the intent of the parties, the court must consider the written document as a whole." *Id.* "[T]he first task of the court is to determine whether the language is ambiguous, which is a question of law." *Mueller v. Mueller,* 2012 VT 59, ¶ 20, 192 Vt. 85, 54 A.3d 168. "If the contract language is ambiguous, its interpretation is a question of fact to be determined on all the evidence, including extrinsic evidence, to determine the intent of the contracting parties." *Id.* Specific contract terms control over more general terms. *See Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.,* 163 Vt. 433, 439, 658 A.2d 31, 35 (1995).

*Bisson v. Reppel*, 2015 WL 631386, at *3 (D. Vt. Feb. 12, 2015). Neither party has directed the court's attention to Vermont precedent defining a "material" breach of a term of the lease.[3]

---

[2] "The landlord may terminate a tenancy *for failure of the tenant to comply with a material term of the rental agreement* or with obligations imposed under this chapter by actual notice given to the tenant at least 30 days prior to the termination date specified in the notice." 9 V.S.A. § 4467(b)(1) (emphasis supplied).

[3] As other courts have noted, whether a breach is material is a question of fact.

A lease is treated as a contract. *Mad Partners, LLC v. Fifth Son Corp.*, 2012 WL 8899890, at *2 (Vt. Super. Ct. Wash. Civ. Div. Apr. 12, 2012) (Kupersmith, Supr. J.). The Restatement (Second) of Contracts identifies factors to consider in determining whether a breach of a contract term is material.

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
> - (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> - (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> - (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> - (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> - (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981). See also *Brady v. CU York Ins. Co.*, 2006 WL 5866264, at *2 (Vt. Mar. 1, 2006) (unpub. mem.) (citing § 241). Here, the alleged breach is the failure to complete financial recertification. The record developed at the hearing does not reflect that this failure has *any* financial consequences for Plaintiff. The recertification process determines the share of the rent to be paid through governmental assistance or benefit. By failing to complete the process Defendant bore the burden of paying a share of his rent that he might not otherwise have been required to pay. The record before the court does not reflect that conduct in question would constitute a *material* breach.

---

> A breach is material when it "is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages." *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728 (Minn. App. 2011) (quotation omitted), *rev. granted* (Minn. June 14, 2011) *and appeal dismissed* (Minn. Aug. 12, 2011). "A material breach goes to the root or essence of the contract." *Id.* (quotation omitted). A landlord must establish grounds for eviction by a preponderance of the evidence. *Nationwide Hous. Corp. v. Skoglund*, 906 N.W.2d 900, 908 (Minn. App. 2018), *rev. denied* (Minn. Mar. 28, 2018).

*515 W. Lake LLC v. Ikram Childcare Ctr. LLC*, 2025 WL 958910, at *4 (Minn. Ct. App. Mar. 31, 2025). See also *Hous. & Redevelopment Auth. of St. Cloud v. Tesfaye*, 2010 WL 1753271, at *4 (Minn. Ct. App. May 4, 2010) ("A breach is material when one of the primary purposes of a contract is violated").

More significantly, there is no evidence that Defendant has breached a term of the lease entered into on January 23, 2025 – the lease that Plaintiff purported to terminate with the June 12, 2025, notice. During 2024 Defendant did not timely provide financial recertification documents as required by the lease. Notwithstanding this failure, Plaintiff entered into a lease with Defendant in January 2025 and now seeks to terminate the lease based on conduct occurring before the lease was executed. In a post-hearing memorandum Plaintiff argues that this pre-lease conduct is grounds for termination based in substantial part on evidence that was not presented at the hearing on the merits – evidence that this court, therefore, disregards.

Plaintiff's burden in *this* matter was to establish that the January 23, 2025, lease was properly terminated and that Defendant remains in possession of the premises. Plaintiff's argument, fundamentally, is that a landlord can terminate a lease for conduct that the landlord was aware of that occurred before the lease was executed. It is fundamental that a breach of a contract occur while a contract is in effect – otherwise there is no contract in existence to breach. *Apodaca v. Young Am. Ins. Co.*, 702 F. Supp. 3d 1094, 1150 (D.N.M. 2023). Plaintiff cannot terminate a lease for breach of a term for conduct that it knew of that predated the execution or formation of the lease agreement.

**ORDER**

Plaintiff having failed to establish (1) that Defendant breached a material term of the lease or (2) that the January 23, 2025, lease was properly terminated, judgment is entered for Defendant.

Electronically signed: 2/16/2026 9:34:38 AM pursuant to V.R.E.F. 9(d)

John R. Treadwell
Superior Court Judge