Filed 05/20/26

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-05036

---

## PE2 Housing LP v. Dylan Baker

---

**FINDINGS OF FACT, DECISION AND ORDER
REGARDING
PLAINTIFF'S MOTION TO PAY RENT INTO COURT AND
DEFENDANT'S MOTION TO DISMISS**

Plaintiff PE2 Housing has filed this ejectment action seeking to evict Defendant Dylan Baker for non-payment of rent. Presently pending before the court are Defendant's motion to dismiss asserting that Plaintiff failed to properly terminate Defendant's lease and Plaintiff's motion for an order that Defendant pay rent into court pursuant to 12 V.S.A. § 4853a. The issues before the court squarely demonstrate the difference between pleading burdens and proof burdens. Both motions are DENIED.

I.   Termination of a lease

Vermont law "require[s] 'punctilious compliance with all statutory eviction procedures, including notice provisions.'" *Vermont Small Bus. Dev. Corp. v. Fifth Son Corp.*, 2013 VT 7, ¶ 15 (quoting *In re Soon Kwon,* 2011 VT 26, ¶ 14). Thus,

> a landlord seeking to terminate a rental agreement [must] provide the tenant with actual notice of termination. The ejectment statute is also clear that it "allows an action for possession where the former lessee holds possession of the demised premises without right, after the termination of the lease." *Andrus v. Dunbar*, 2005 VT 48, 1 9 (mem.).

> Thus, a landlord must first terminate the tenancy in a manner specified by law—i.e., with actual notice--before the landlord can bring an ejectment action. See *Andrus*, 2005 VT 48, ¶ 9-10. The requirement that a tenancy must be properly terminated through clear notice is "rooted in the principle that the tenant cannot be put in the position of having to speculate on the meaning and legal effect of the landlord's actions." *Id*. at ¶ 13; *cf. also* 4A A.N. Steinman, Federal Practice Procedure Civil § 1095 (4th ed., June 2024 update) (Historically, the usual and most effective method of service [of process] has been by personal delivery ... This procedure avoids any question as to whether the defendant has received notice of the suit[.]'").

1

*Crestmark Inc. v. Tuliper*, 2025 WL 2380235, at *1-2 (Vt. Super. Ct., Rut. Civ. Div. July 30, 2025) (Burke, Supr. J.). "[U]nder 9 V.S.A. § 4468, a landlord's right to seek ejectment under 12 V.S.A. § 4853 does not arise until the tenancy is terminated." *Garcia v. Birch*, 2024 WL 4328592, at *2 (Vt. Super. Ct., Cal. Civ. Div. Aug. 30, 2024) (Richardson, Supr. J.). "The ejectment statute allows an action for possession where the former lessee "holds possession of the demised premises without right, *after the termination of the lease*." 12 V.S.A. § 4851. *Andrus v. Dunbar*, 2005 VT 48, ¶ 10. See also *Sabourin v. Woish*, 116 Vt. 385, 387 (1950) (the ejectment statute "provides a summary remedy for a landlord whose tenant holds over without right after the determination of the lease"). Pursuant to 9 V.S.A. § 4468, "if the tenant remains in possession *after termination of the rental agreement* without the express consent of the landlord, the landlord may bring an action for possession, damages, and costs under 12 V.S.A. chapter 169, subchapter 3." The law is abundantly clear, "it is only when the lessee holds without right *after* the determination of the lease that a plaintiff can resort to the remedy." *Sabourin*, 116 Vt. at 387. Plaintiff must have terminated the lease and provided actual notice of the termination to Defendant tenant.

"The requirement to provide notice of termination to the tenant that the landlord intends to terminate the lease for non-payment is to provide protection for the tenant against arbitrary and immediate terminations, and to afford the tenant the opportunity to cure any deficiency." *Swanson v. Gilmartin*, 2012 WL 13257779, at *2 (Vt. Super. Ct., Orange Civ. Div. May 03, 2012) (Eaton, Supr. J.). See also, *Giancola v. Boyd*, 2024 WL 5159642, at *3 (Vt. Super. Ct. Rut. Civ. Div. Dec. 10, 2024) (Burke, Supr. J.). ("[t]he purpose of a notice of termination is to give notice to a tenant that their tenancy is being terminated"). The Vermont Supreme Court has not held that a notice of termination must include specific information about the right to cure. The Superior Courts are split on the issue.

> At issue is whether a notice of termination for nonpayment of rent must include information about the right to cure. A split of authority exists, in which a number of courts have concluded that it must, e.g., *Tyler v. Elberson,* No. 21-CV-01041 (Vt. Super. Ct. Dec. 6, 2021) (Toor, J.); *Crompton v. Ball,* No. 686-10-05 Rdcv (Vt. Super. Ct. Dec. 15, 2005) (Norton, J.); *Mills v. Smart,* No. 155-6-97 Bncv (Vt. Super. Ct. Jul. 9, 1997) (Wesley, J.) (citing *Halasz v. Kingsbury,* No. S502-87 WmC (Vt. Super. Ct. Dec. 15, 1987)), whereas other courts have concluded that inclusion of the information is not required, at least in some contexts, e.g., *Barnet Tradepost, LLC v. Alden,* No. 22-CV-02437, 2022 WL 19002742 (Vt. Super. Ct. Nov. 9, 2022) (Richardson, J.); *Corse v. Pickett,* No. 219-12-15 Oecv, 2016 WL 1167745 (Vt. Super. Ct. Feb. 4, 2016) (Tomasi, J.). Both views are supported by persuasive considerations, including the extent to which information about the right to cure is needed to provide the tenant with notice of their rights, e.g., *Mills,* No. 155-6-97 Bncv, and the observation that information-disclosure requirements are expressly included in other legislative schemes (such as those pertaining to mobile-home park evictions, nonjudicial foreclosures, and the provision of

2

information about VAWA occupancy rights), but are not included within the statutory provisions related to notices of termination of residential rental agreements, e.g., *Corse,* No. 219-12-15 Oecv.

*Stearns v. Mondell*, 2024 WL 409037, at *1 (Vt. Super. Ct., Winds. Civ. Div. Jan. 11, 2024) (Corbett, Supr. J.). This court concludes that in the absence of a statutory requirement to include such information the notice of termination need not include a reference to the right to cure. As Judge Tomasi has stated

> the Court concludes that a notice need not contain such information. First, the relationship between landlords and tenants is highly regulated by statute. The relevant notice provision here, 9 V.S.A. § 4467, does not contain an express requirement that the landlord provide information to the tenant regarding the right to cure. Second, given that the remedy for a defective notice is a severe one -dismissal of the eviction action, *see Andrus v. Dunbar*, 2005 VT 48, ¶ 9-15, 178 Vt. 554, 555-57 - the Court does not believe it appropriate to impose, by judicial ruling, an additional notice requirement that is not set out in the statute.
> Lastly, the Legislature has shown that it knows how to require that landlords give tenants notice of their rights to cure. In the context of mobile home evictions, the Legislature has instructed landlords to provide tenants with such information in order to terminate their tenancies. 10 V.S.A. § 6237(a). Its failure to include similar language in Section 4467 is proof that it did not intend to impose that requirement for tenancies in general. While the Court believes landlords certainly should apprise tenants of their right to cure, that is not presently a statutory requirement.

*Corse v. Pickett*, 2016 WL 1167745, at *1 (Vt. Super. Ct., Orange Civ. Div. Feb. 02, 2016) (Tomasi, Supr. J.). Where, however, a landlord has included information about the right to cure including the amount that must be paid to effectuate such a cure, that information must be accurate. *Rockport Schooner Co. v. Rockport Whale Watch Corp.*, 789 N.E.2d 151, 152 (Mass. Ct. App. 2003) ("even absent a statutory requirement to notify a tenant of its right to cure, a notice to quit may be rendered invalid by false or misleading statements"). To hold otherwise would be to allow a landlord to mislead a tenant as to the steps that must be taken to maintain a tenancy. Such a holding would be inconsistent with 12 V.S.A. § 4773 (allowing a tenant to stop an ejectment by paying all rent, interests, and costs of the suit into the court any time prior to the execution of the writ of possession).

II. Defendant's motion to dismiss is denied

"The Vermont Supreme Court 'agree[s] generally' 'that the superior court has no jurisdiction over an eviction action unless proper notice is served in accordance with statutory requirements.'" *Lizabeth's Pine West, LLC v. Francis*, 2026 WL 491059, at *1 (Vt. Super. Ct. Feb. 09, 2026) (Owyang, Supr. J.) (quoting *Andrus v. Dunbar*, 2005 Vt. 48, ¶¶ 9-10 (mem.)). While Defendant does not specifically cite any authority for the

motion to dismiss,[1] the court concludes that the nature of his claim is that this court lacks subject matter jurisdiction over this proceeding because the lease was not properly terminated.

Thus, Defendant seeks dismissal pursuant to V.R.C.P. 12(b)(1) for lack of subject matter jurisdiction in the Windham Civil Division. "A motion under Rule 12(b)(1) questions a court's authority to adjudicate a particular controversy before it." *Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012).

> As a leading treatise explains, parties and courts do not use Rule 12(b)(1) exclusively to raise a *lack* of subject matter jurisdiction; they also use the motion to address "a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions." Those defenses generally involve whether a court should decline to exercise subject matter jurisdiction that the court otherwise would have, such as abstention doctrines and justiciability issues. "Thus, the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses" that "share the common theme of challenging the court's ability to proceed with the action."

*Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 340–41 (Del. Ch. Ct.), *as corrected* (Dec. 4, 2023)[2] (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2023)). This court may consider evidence outside the pleadings in resolving the motion to dismiss for lack of subject matter jurisdiction. *Off. of Auditor of Accts. v. Off. of Att'y Gen.*, 2025 VT 36, ¶ 8; *Conley v. Crisafulli*, 2010 VT 38, ¶ 3.[3] However, this court must

---

[1] This deficiency alone is a basis for denying the motion. V.R.C.P. 7(b)(1) ("[a]n application to the court for an order shall be by motion which ... shall state with particularity ... *a concise statement of the ... law relied on ...*") (emphasis supplied); *In re Bellows Falls Hydroelectric Project Water Quality Cert. Appeal*, 2026 WL 449597, at *4 (Vt. Super. Ct., Env. Div. Jan. 23, 2026) (McLean, Supr. J.) ("[n]owhere in the[] motion ... did [Defendant] ... identify a single rule on which the motion was premised. The court was left wholly to speculate about how, and under what Rule(s), it was to evaluate [Defendant's] request[]").

[2] *Aff'd sub nom. CSC Upshot Ventures I, L.P. v. Gandhi-Kapoor*, 326 A.3d 369 (Del. 2024)

[3] Some courts have drawn a distinction between factual and facial challenges under Rule 12(b)(1).

> In a facial challenge, the party asserts the allegations of the complaint are insufficient to establish the court's jurisdiction over the subject matter of the case. When a facial challenge is presented, the court will look only to the complaint to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. In a factual challenge, the party asserts there is no jurisdiction over the subject matter of the case notwithstanding the allegations of the complaint. When a factual challenge is presented, the court may consider and weigh evidence outside of the pleadings to answer the jurisdictional question.

*Bleich v. Bleich*, 981 N.W.2d 801, 806 (Neb. 2022). To the extent that such a distinction must be drawn, Defendant's motion is clearly a factual challenge to subject matter jurisdiction of this court.

"assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts." *Wool v. Off. of Prof. Regul.*, 2020 VT 44, ¶ 8, 212 Vt. 305, 236 A.3d 1250 (quotation omitted). We will not dismiss a complaint on these grounds "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Murray v. City of Burlington*, 2012 VT 11, ¶ 2, 191 Vt. 597, 44 A.3d 162 (mem.) (quotation omitted).

*Housing Our Seniors in Vermont Inc. v. Agency of Com. & Cmty. Dev.*, 2024 VT 12, ¶ 11.

Applying this standard to the complaint, Plaintiff has met the pleading burden.

Defendant makes two arguments in support of the motion to dismiss. First, he argues that the rent increase during the initial rental term was unlawful. And second, he argues that the rent increase is not authorized under the Low-Income Housing Tax Credit (LIHTC) -related covenant. Applying the standard applicable to a motion pursuant to V.R.C.P. 12(b)(1) neither argument is persuasive.

Defendant first argues that *any* rent increase during the initial term of the lease is unlawful – that rent may only be increased after the expiration of the initial term. Defendant's argument lacks support in statute or in the terms of the lease.

Defendant's lease[4] provides that "[a]ny increase of rent shall take effect on the first day of the *rental period* following not less than sixty (60) days' written notice to the Tenant." Lease at ¶ 3 (emphasis supplied). This provision tracks Vermont statute – "[a]n increase in rent shall take effect on the first day of the *rental period* following no less than 60 days' actual notice to the tenant." 9 V.S.A. § 4455(b).[5] Defendant argues that the "rental period" means the term of the lease. At hearing Defendant noted that a lease is a contract[6] and that to allow a landlord to materially alter the provisions of such a contract during the term of the lease would be unlawful.

---

[4] The lease – part of the rental agreement – is attached to and filed with the complaint pursuant to 12 V.S.A. § 4852 and, thus, merges into the complaint and may be considered by the court.
> Where a complaint … "relies upon a document," it "merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605 (mem.) (quotation omitted) (explaining that trial court properly relied on entirety of town plan where plaintiff specifically referred to it in complaint but did not attach full text). A court is not obligated to accept allegations in the complaint purporting to tell it how to interpret such a document, although any ambiguities must be construed in the plaintiff's favor. *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 13, 198 Vt. 204.

*Pigeon v. Stone*, 2025 WL 1913248, at *5 (Vt. July 11, 2025) (unpub. mem.).

[5] "'Actual notice' means receipt of written notice hand-delivered or mailed to the last known address." 9 V.S.A. § 4451(1).

[6] A lease is treated as a contract. *Mad Partners, LLC v. Fifth Son Corp.*, 2012 WL 8899890, at *2 (Vt. Super. Ct. Wash. Civ. Div. Apr. 12, 2012) (Kupersmith, Supr. J.).

The term "rental period" is amenable of two interpretations.[7] It could mean – as Defendant suggests – the term of the lease. In the alternative it could mean the periods of time at which rental payments must be made. The term is used in three statutes related to landlord-tenant relations – in the Ejectment chapter in Title 12 and in the Residential Rental Agreements Act in Title 9. As noted, the term is used in 9 V.S.A. § 4455(b). Additionally, 9 V.S.A. § 4467 regarding termination of tenancy provides that

> The landlord may terminate a tenancy for nonpayment of rent by providing actual notice to the tenant of the date on which the tenancy will terminate, which shall be at least 14 days after the date of the actual notice. The rental agreement shall not terminate if the tenant pays or tenders rent due through the end of *the rental period* in which payment is made or tendered.

9 V.S.A. § 4467(a) (emphasis supplied). A related provision in Title 12 states that "[b]efore a writ of possession is executed, if the defendant pays into court all rent due through the end of the current *rental period*, including interest and the costs of suit, the action shall be discontinued." 12 V.S.A. § 4773.

The meaning of the "rental period" in § 4455(b) is a matter of statutory construction.

> When interpreting a statute, this Court's aim is to determine and give effect to the intent of the Legislature. This inquiry begins with the plain meaning of the language of the statute. Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used. When the plain language is ambiguous, we construe statutes in light of the entire statutory scheme. In doing so, we look to the statute's purpose, effects, and consequences.

*Est. of Daniels by & through Lyford v. Goss*, 2022 VT 2, ¶ 11 (cleaned up). Statutes are not read and interpreted in isolation – "we read and construe together the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system." *State v. A.P.*, 2021 VT 90, ¶ 12 (citation omitted). Thus, "[w]hen the same word is used in statutes in pari materia, it will bear the same meaning throughout, unless it is obvious that another meaning was intended." *Robes v. Town of Hartford*, 161 Vt. 187, 194 (1993).

This court, therefore, does not consider the meaning of rental period in a vacuum. The meaning must apply to the other statutes related to residential rental agreements that use the term. Here, the provisions of 9 V.S.A. § 4467(a) and 12 V.S.A. § 4773 provide clear guidance as to the meaning of the term. The term "rental period" must refer to the specific period of time for which a specific rental payment is owed. To interpret "rental

---

[7] This court is not aware of any decisions of the Vermont Supreme Court of the Vermont Superior Courts interpreting "rental period."

period" to mean the term of the lease would require a tenant seeking to cure nonpayment to pay the balance due over the entire remaining term of the lease no matter how far that may be in the future. That cannot have been the Legislature's intent. Thus, where as here, rent is paid monthly on the first of the month "rental period" refers to that month not the full year term of the lease.[8]

Defendant's second argument is that Plaintiff has failed to properly establish that the rent increase was proper in light of Low-Income Housing Tax Credit limitations. This argument must fail because it is not "beyond doubt" that Plaintiff cannot establish facts or circumstances that would entitle Plaintiff to relief. *32 Intervale, LLC v. City of Burlington*, 2026 VT 9, ¶ 21. In other words, the complaint does not facially and inarguably establish an unauthorized rent increase was imposed. Plaintiff may be able to establish that the rent increase fell within the applicable income limitations.

The motion to dismiss pursuant to V.R.C.P. 12(b)(1) is denied.

   III. Order to pay rent into court

"In any action against a tenant for possession, the landlord may file a motion for an order that the tenant pay rent into court." 12 V.S.A. § 4853a(a) (as amended by 2007, Adj. Sess., No. 125, § 1). While not explicitly stated, the purpose of this statute must include maintaining the status quo – that while the tenant maintains possession of the premises rent (or a portion of rent) must be paid into court. As Judge Richardson has stated "[a] rent escrow hearing is a preliminary hearing and does not involve resolving the ultimate merits of the case. By statute, it is limited to questions of whether the rent is currently unpaid and due and the amounts of rent due each month. 12 V.S.A. § 4853a." *Very Vermonty Corp v. Schwank*, 2024 WL 1240668, at *1 (Vt. Super. Ct., Lam. Civ. Div. Jan. 08, 2024) (Richardson, Supr. J.). See also 12 V.S.A. § 4853a(d) ("[i]f the court finds the tenant is obligated to pay rent and has failed to do so, the court shall order full or partial payment into court of rent as it accrues while the proceeding is pending ..."). When a rent escrow order is issued the consequences of non-compliance for a tenant are severe – the landlord is "entitled to judgment for immediate possession of the premises," and the court must issue a writ of possession "forthwith." 12 V.S.A. § 4853a(h). In other words, judgment for possession is entered for the landlord.

The statute states that an order to pay rent into court must issue if the court "finds that the tenant is obligated to pay rent and has failed to do so ...." 12 V.S.A. § 4853(d). The statute does not appear to require any finding as to the validity or merits of the underlying eviction proceeding. As noted, however, a landlord may be entitled to judgment for possession based on non-compliance with a rent escrow order. If the validity of the underlying proceeding is not an element that the court must consider at a rent escrow hearing, then a landlord may obtain an order of possession without, for example, properly terminating the tenancy. As noted above, the ejectment statutes do not provide a landlord relief unless a tenant maintains possession of the premises *after*

---

[8] In light of the clear statutory language authorizing landlords to increase rent during the term of the lease the court does not reach Defendant's argument based in contract.

a lease has terminated. *Andrus*, 2005 VT 48, ¶ 10. The court must consider whether § 4853(d) limits this court's required findings at a rent escrow hearing to the two issues identified in that subsection.

Again, the issue before the court is a matter of statutory construction. In construing a statute, a court's "principal goal is to effectuate the intent of the Legislature." *Tarrant v. Department of Taxes,* 169 Vt. 189, 197 (1999). If legislative intent is clear from the plain meaning of the statutory language, this court must enforce the statute "according to its terms without resorting to statutory construction." *Id*. See also *Off. of Child Support ex rel. Lewis v. Lewis*, 2004 VT 127, ¶ 7 ("When considering claims that arise under a statute, we apply the plain meaning of the statute's words because we presume it reflects the Legislature's intent"). However, while statutes should not be construed to produce absurd or illogical results, this

> rule does not ... provide a license to substitute this Court's policy judgments for those of the Legislature. As the leading authority on statutory construction has cautioned, "the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." 2A N. Singer, Statutes and Statutory Construction § 46.07, at 199 (6th ed.2000). Thus, as one court has cogently explained, the doctrine merely permits an otherwise reasonable construction when a plain reading of the statute "would produce a result demonstrably at odds with any conceivable legislative purpose." *Taylor–Hurley v. Mingo County Bd. of Educ.,* 551 S.E.2d 702, 710 (W.Va. 2001); see also *Colwell v. Allstate Ins. Co.,* 2003 VT 5, ¶ 11 (declining to reinterpret terms of statute under absurd results doctrine where plain reading would not cause it to "fail in its essential purpose").

*Jud. Watch, Inc. v. State*, 2005 VT 108, ¶ 16. The Court has cautioned that "a statute is not absurd simply because it causes an outcome that a litigant believes to be anomalous or perhaps unwise." *Billewicz v. Town of Fair Haven*, 2021 VT 20, ¶ 28 (cleaned up). A construction is absurd if "it is quite impossible that [the Legislature] could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone," *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019), or where it "defies rationality or renders the statute nonsensical and superfluous." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).

Continued possession after termination of the lease is a necessary predicate to subject matter jurisdiction over an ejectment action. *Andrus*, *supra*. It is "quite impossible" that the Legislature intended to create a mechanism for landlords to obtain a judgment for and a writ of possession in circumstances where the superior court lacks jurisdiction over the ejectment proceeding. Thus, this court concludes that a landlord seeking an order for a tenant to pay rent into court must establish:

1. That tenant maintains possession of the premises after termination of the lease;
2. That tenant is obligated to pay rent; and,

8

3. That tenant has failed to do so.

On November 14, 2025, Plaintiff filed a motion pursuant to 12 V.S.A. § 4853a "to escrow with the Court the monthly rent due from Defendant Dylan Baker to the Plaintiff in the amount of $761.00 with payments to commence on the date to be set by the Court." The motion was supported by an affidavit of Windham & Windsor Housing Trust Property Manager Dallas Kadlik. 12 V.S.A. § 4853a(a). The affidavit asserted that:

> Rent is due on first of each month, in the amount of $761.00.
>
> The Defendant is obligated to pay and has failed to pay back rent in the amount of $4,610.00 as of November 7, 2025.
> …
>
> The Defendant has failed to pay the rent and other charges due and has failed to remove himself from the rental premises as of this date.

Affidavit of Kadlik at ¶¶ 3-6. To prevail on the motion Plaintiff must establish the above noted elements by a preponderance of the evidence.[9]

### IV. Plaintiff did not prove the tenancy lawfully terminated and the court, thus, denies the motion to pay rent into court

A hearing on Plaintiff's motion pursuant to 12 V.S.A. § 4853a for an order that Defendant pay rent into court was held on April 13, 2026. Plaintiff was represented by Attorney Samantha Snow. Defendant did not appear but was represented by Attorney Sara Kagle. Testimony was taken from Elizabeth Lachapelle – a property manager for the Windham & Windsor Housing Trust. Various exhibits were admitted.

The evidence presented at the hearing established the following relevant facts:[10]

- On August 28, 2024, the Windham & Windsor Housing Trust and Defendant entered into a lease for Defendant to rent Unit # 101 – an unfurnished unit – located at 14 Birge Street in Brattleboro, Vermont.

- Relevant provisions of the lease for Unit # 101 included:
    …

---

[9] Proof by a preponderance of the evidence is shown "when the equilibrium of proof is destroyed, and the beam inclines toward him who has the burden, however slightly. A bare preponderance is sufficient, though the scales drop but a feather's weight." *In re M.L.*, 2010 VT 5, ¶ 25 (quoting *Livanovitch v. Livanovitch*, 99 Vt. 327, 328 (1926) (cleaned up)). Thus, where the conflicting evidence is of equal weight, or where the Defendant's evidence outweighs the Plaintiff's, "the evidence of the [Plaintiff] does not preponderate." *In re Smith*, 169 Vt. 162, 174 (1999).

[10] The court relies on the credible evidence adduced at the hearing in making these findings by a preponderance of the evidence.

2. TERM. This lease shall be for one year beginning on 8/28/24-8/27/25.

3. RENT. Tenant agrees to pay as rental for the demised premises Seven hundred thirty-nine dollars ($ 739) per month, payable, without demand, in advance on the first of the month. ... Any increase of rent shall take effect on the first day of the rental period following not less than sixty (60) days' written notice to the Tenant. ...

7. TENANT OBLIGATIONS:

...

C. INCOME VERIFICATION. Tenant acknowledges that Landlord's non-profit status and its various funding sources permit the premises to be rented at reasonable rental rates. For this reason Tenant agrees to cooperate with Landlord in providing employment and income information to Landlord as may be requested by Landlord's funding sources.

D. TERMINATION. If Tenant desires to terminate this agreement, they must do so with at least 30 days' written notice, from the first of the month to the end of the month.

8. RESIDENT HANDBOOK. The Resident Handbook and House Rules set forth in that Handbook, are expressly made a part of this lease, and Tenant agrees to abide by such Handbook and House Rules. Breach of this Resident Handbook and House Rules shall be a default under this rental agreement.

...

11. DEFAULT/TERMINATION. if Tenant fails to pay rent when due, the Landlord may terminate the tenancy on or after the first day of the next succeeding rental period. Landlord shall give notice by certified mail or by having notice served by any law enforcement officer at least 14 days prior to the termination date specified in the notice. This rental agreement shall not terminate if Tenant pays all arrearages prior to the termination date. Tenant may not defeat a notice to terminate by payment of arrearages more than three times in twelve months. Acceptance of partial payment of rent shall not constitute a waiver of Landlord's remedies for nonpayment of rent.

- On November 1, 2024, the Windham and Windsor Housing Trust sent Defendant a written notice of a rent increase. The notice stated that

    Effective January 1, 2025 the contract rent for your apartment will increase from $739 to $761 per month. This is an increase of 3%.

> Rising costs for utilities, insurance and general maintenance have been significant over the past year. This rent increase will help to cover these operating expenses in 2025.

- On September 18, 2025, the Windham & Windsor Housing Trust sent Defendant a termination notice. The notice stated:

  > Please be advised that Windham & Windsor Housing Trust, Inc. (WWHT) is terminating its Rental Agreement with you effective October 23, 2025
  >
  > Under the terms of your lease and under Vermont law this Notice is being sent to you at least thirty (30) days prior to the date you must vacate. If you do not make payment of the full amount show below, you must remove all persons and all personal property from your rental unit on or before October 23, 2025
  >
  > The amount of rent due as of the date of this letter is $3,088.00.
  >
  > However if payment is made after the first, the amount which must be paid on or before October 23, 2025, to prevent eviction, is $3,088.00 plus monthly rent of $761.00, for each month thereafter.
  >
  > **for a TOTAL DUE of $3,849.00.**
  >
  > Pursuant to the terms of the Rental Agreement, rent will continue to accrue for each additional month of occupancy and WWHT may also recover from you reasonable attorneys' fees and all other costs incurred in connection with a legal action to recover any monies due under its Rental Agreement with you.

  The notice was sent by first class and certified mail. The notice first class mail was not returned to sender.

- Defendant did not tender rent due by October 23, 2025. Defendant retains possession of the premises.

- As of April 1, 2026, Defendant's outstanding rent balance was $ 8,415.00.[11]

- Defendant remains in possession of the unit.

---

[11] The rent ledger demonstrates that the unpaid balance includes multiple months where a rental amount of $ 761.00 was not paid.

Plaintiff and Defendant have filed memoranda of law. The parties agree that the premises are subject to the Low-Income Housing Tax Credit. An applicable Housing Covenant states:

> Owner covenants and agrees to submit to the Agency a report in form and content acceptable to the Agency...which shall demonstrate ongoing compliance with this Covenant, specifically, that the income levels of tenants are at or below applicable limits and all low-income units are occupied by eligible tenants in accordance with Section 42. Of a total of 25 units in the development, 23 units will be income – and rent-restricted (the "Housing Credit Units"). Of the Housing Credit Units, 23 shall be occupied by households at or below 60% of the Area Median Gross income as adjusted by household size ("AMGI"). The minimum set-aside election for the project under Section 42(g)(I) of the Internal Revenue Code is the **"40-60"** election.

Vermont Housing Finance Agency Housing Credit (HC) Housing Subsidy Covenant as recorded in Book 424, Page 872 of the Brattleboro Land Records.[12]

The 40-60 election referenced in the covenant is defined by statute:

> The project meets the requirements of this subparagraph if 40 percent or more of the residential units in such project are both rent-restricted and occupied by individuals whose income is 60 percent or less of area median gross income.

26 U.S.C. § 42(g)(1)(B).[13] The parties appear to agree that the statutory income limitation operates as a cap on rent. Plaintiff's Memorandum at 3; Defendant's Memorandum at ¶ 16.

As noted above, Defendant makes two arguments regarding this matter. First, he argues that the rent increase during the initial rental term was unlawful. And second, he argues that the rent increase is not authorized under the LIHTC-related covenant. In the context of the rent escrow hearing both arguments are directly related to the validity of

---

[12] Plaintiff's Memorandum at 2; Defendant's Memorandum at ¶ 11. While the covenant was not introduced as an exhibit at hearing the court will consider it as having been properly presented to the court given that both parties reference and rely on the document.

[13] The term "rent-restricted" is also defined by statute:
> [A] residential unit is rent-restricted if the gross rent with respect to such unit does not exceed 30 percent of the imputed income limitation applicable to such unit. For purposes of the preceding sentence, the amount of the income limitation under paragraph (1) applicable for any period shall not be less than such limitation applicable for the earliest period the building (which contains the unit) was included in the determination of whether the project is a qualified low-income housing project.

26 U.S.C. § 42(g)(2)(A).

the notice of termination. Indeed, the record is clear that Defendant is obligated to pay rent and has failed to do so.[14]

Defendant's first argument is rejected for the reasons noted above. See § II, *supra*.

Defendant's second argument regarding the validity of the rent increase imposed by Plaintiff has merit. It is undisputed that the unit in question is subject to limitations imposed related to its status as a LIHTC unit. Thus, the parties agree that there is an income limitation on the rent that may be imposed – and, necessarily, a limitation on rent increases. The rent cannot be increased to an amount that exceeds the LIHTC limitations. Plaintiff agrees but argues that the burden on this point is on Defendant. See Plaintiff's memorandum at 3 ("Defendant failed to appear at the hearing [and] failed to provide any information regarding his income …").

The validity of the rent increase is directly relevant to the validity of Plaintiff's notice of termination. Despite not being required by statute, the notice *did* reference Plaintiff's statutory right to cure. 12 V.S.A. § 4773. The notice additionally identified an express amount due in order to cure and noted that the amount would increase by $ 761.00 for each additional month – the rent as set forth in the notice of rent increase. Again, the notice explicitly stated the payment necessary to cure the termination for non-payment *and* that amount is based on rental payments in light of the rent increase stated in the November 1, 2024, notice. If that rent increase is unauthorized then the amount of back rent due, the amount of rent owed going forward, and the amount necessary to cure are incorrect. It may be that the rent increase notice on November 1, 2024, does not fall afoul of the LIHTC limitations. However, no evidence was adduced at the rent escrow hearing on this point. In other words, based on the record before it, the court cannot find that the rent increase was authorized. And, thus, cannot find that the unpaid rent balances are based on the actual rent owed by Defendant.

Given this record, Plaintiff's notice of termination is, therefore, defective. As the Massachusetts Supreme Judicial Court has stated, "[t]o be defective such that it fails to terminate a lease, a notice to quit must involve a material error or omission, i.e., a defect that has some meaningful practical effect." *Cambridge St. Realty, LLC v. Stewart*, 113 N.E.3d 303, 311 (Mass. 2018). It is hard to imagine a defect that would have a more meaningful and practical effect than a potential inaccuracy in the amount necessary to cure and, thus, to discontinue this ejectment proceeding. 12 V.S.A. § 4773. Based on the evidence presented at the rent escrow hearing this court cannot find that the lease was properly terminated by the September 28, 2025, notice of termination. Plaintiff has not established by a preponderance of the evidence that Defendant maintains possession *after* termination of the lease.

The motion for an order to pay rent into court is denied.

---

[14] The exact unpaid amount is the crux of one of the issues before the court.

**ORDER**

Plaintiff's Motion to Pay Rent Into Court (# 1) is DENIED.

Defendant's Motion to Dismiss (# 6) is DENIED.

The matter will be set for a hearing on the merits of the complaint.

Electronically signed: 5/20/2026 3:19:05 PM pursuant to V.R.E.F. 9(d)

_____
John R. Treadwell
Superior Court Judge


As to the facts:


_____        _____
Carolyn Partridge                       Lamont Barnett
Assistant Judge                         Assistant Judge